■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY J. Foss, Appellant. [700 NYS2d 499] —Mikoll, J. P. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered May 29, 1996, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), robbery in the first degree and robbery in the second degree.

In the fall of 1994, defendant became a suspect in the homicide of Jonathan Boynston, whose remains were found in the City of Albany on September 21, 1994, three months after he disappeared. During the course of their investigation, Detectives Anthony Bruno and James Lyman contacted defendant's former girlfriend, Marcy Stiffen. Having learned that defen-

dant had moved to Florida, the detectives gave Stiffen their pager numbers and asked her to contact them in the event she saw defendant again. On April 12, 1996, Stiffen paged Bruno to report that defendant was at her apartment, banging on the door and threatening her boyfriend with a handgun. Bruno, who was off duty, contacted Lyman, who responded to the scene with another officer. Defendant was arrested for menacing and taken into custody, where he was subsequently questioned about the Boynston homicide. Defendant ultimately gave two written statements admitting participation in the crime.

Defendant was thereafter indicted on three counts of murder in the second degree (intentional murder, depraved indifference murder and felony murder), one count of robbery in the first degree and one count of robbery in the second degree. Following a jury trial, defendant was convicted of both robbery counts as well as felony murder and depraved indifference murder. He was sentenced to indeterminate terms of imprisonment of 25 years to life on the murder counts, $8^{1/3}$ to 25 years for robbery in the first degree and 5 to 15 years for robbery in the second degree. County Court ordered the sentence on the depraved indifference murder to run consecutively with both robbery sentences. Defendant now appeals.

After a thorough review of the record, and careful consideration of the numerous grounds for reversal advanced by defendant, we conclude that although the proceedings were not error free, these errors neither individually nor cumulatively operated to deprive defendant of a fair trial. Accordingly, the judgment of conviction should stand.

Defendant first asserts that his inculpatory statements should have been suppressed because his arrest for menacing was nothing more than a pretext for interrogating him regarding the homicide. We cannot agree. True enough, the police were interested in speaking with defendant, and the events of April 12, 1996 thus represented a fortuitous development in their investigation. But fortuitous does not equate to pretextual. The fact remains that the detectives' interaction with defendant, however opportune, was triggered by Stiffen's call to them, which in turn was triggered by defendant's actions at her apartment. Significantly, except for denying that he possessed or threatened the use of a weapon, defendant acknowledged that he was involved in a "dispute" and other untoward conduct at Stiffen's apartment immediately prior to his arrest.

Defendant next asserts that County Court erred in admitting into evidence an earring, alleged to have belonged to the victim, found in defendant's personal effects which Bruno and

Lyman retrieved from defendant's motel room after his arrest. It is not disputed that following his arrest, defendant requested that detectives go to his motel room and retrieve his personal belongings, and that he signed a consent to search form for that purpose. After trial commenced, it developed that one of the victim's relatives observed an earring which was among defendant's personal effects retrieved by the detectives, and she advised the prosecutor that she believed it to be the same earring she had given to the victim. When the prosecutor apprised the defense of this development, and her intention to introduce the earring into evidence, defendant made an oral motion to suppress, which the court denied without a hearing.

Defendant now contends that County Court erred in summarily denying his motion to suppress the earring, and in indicating that he would be required to testify in the event of a suppression hearing. This contention mischaracterizes the basis of the court's refusal to grant a hearing, which was predicated on its finding that defendant failed to provide sworn allegations raising any constitutional ground in support of his motion (*see, People v Frazier*, 185 AD2d 360, *lv denied* 81 NY2d 762; *People v Kitchen*, 162 AD2d 178, *lv denied* 76 NY2d 941). Nor are we persuaded by defendant's contention that in requesting that the detectives obtain his belongings, and in executing the consent to search, he expected that his property would be returned to him and that consequently its retention by the police or prosecution and the ensuing recovery of the earring was beyond the scope of his consent.

" 'The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?' " (*People v Mitchell*, 211 AD2d 553, 554, *lvs denied* 86 NY2d 734, quoting *Florida v Jimeno*, 500 US 248, 251). At the time defendant initiated the request and consented to the detectives' retrieval of his property, he was in police custody and had just admitted participation in a murder. We cannot accept as reasonable defendant's claimed belief that his property would not be retained but would be returned to him. Furthermore, his property, once it came into police custody, was subject to an appropriate inventory search (*see, e.g., People v Burghart*, 177 AD2d 866, *lv denied* 79 NY2d 998; *People v Castillo*, 150 AD2d 957, *lv denied* 74 NY2d 806).

We would be inclined to agree, however, with defendant's argument that the earring should not have been admitted into evidence on the strength of the identifying witness' testimony

that it "looked like" an earring owned by the victim. Aside from the fact that this claim is not adequately preserved since defendant did not object to the earring's admission on that basis, we deem any error in its receipt to be harmless (see, People v Crimmins, 36 NY2d 230).

We reach a similar conclusion of harmless error with respect to the receipt into evidence of "before and after" photographs of the victim, consisting of a photograph taken at his sister's graduation and a concededly grisly series of photographs of the victim's skeletal remains and skull. We are not particularly persuaded by the People's contention that these photographs were required to establish the victim's identity, the time of death or the nature of the injuries. Since defendant stipulated to the identity of the remains and medical testimony established the cause of death, the photographs were not essential to establish a material fact to be proven at trial and should not have been admitted (see, People v Stevens, 76 NY2d 833, 835).

Defendant next contends that he was deprived of his right to a fair trial by virtue of County Court's excessive and harsh reprimands of defense counsel throughout the trial. Defendant cites three specific instances in support of his claim. The relevant inquiry is whether the cumulative effect of the court's caustic comments and rebukes was such as to deny defendant a fair trial; we are unable to conclude that such was the case here (compare, People v Steinhardt, 9 NY2d 267; People v Ashby, 72 AD2d 506; People v Cruz, 52 AD2d 1; People v Sumpter, 46 AD2d 779; People v Setaro, 44 AD2d 847). Somewhat amelioratively, the court instructed the jury on several occasions throughout the trial that they were not to consider or otherwise be influenced by the court's rulings on objections, bench conferences or its actions throughout the trial. Moreover, the record belies defendant's claim that counsel was inhibited from aggressively pursuing his cause by virtue of the court's intimidation of him. Throughout the trial, counsel continued to interpose objections, cogently cross-examine witnesses and advocate on behalf of positions in furtherance of the defense case.

We turn next to defendant's claims that reversal is warranted by reason of infirmities in those portions of County Court's charge to the jury on felony murder, the voluntariness of defendant's statements and the issue of causation. The gravamen of defendant's objection to the felony murder charge is that the court declined his request to expressly instruct the jury that it must find beyond a reasonable doubt that the intent to commit robbery had been formulated before, and not after,

the victim was killed. The court's instructions, which tracked the felony murder statute, incorporated the requirement that the People prove beyond a reasonable doubt that defendant caused the death of the victim "while in the course of and in furtherance of the commission of robbery or in immediate flight therefrom". County Court reiterated this requirement several times during the course of its charge on the elements of felony murder, which also cautioned that if the jury found that the People failed to prove to the jury's satisfaction beyond a reasonable doubt any element of felony murder as so explained, defendant must be acquitted of that charge. Notwithstanding the court's refusal to use the explicit language requested by defendant, it conveyed the appropriate legal standard, including the requirement that the intent to rob be formulated prior to the murder, to be applied by the jury in evaluating defendant's guilt with respect to felony murder (*see, e.g.*, *People v Emmick*, 158 AD2d 960, *lv denied* 76 NY2d 734; *People v Dering*, 140 AD2d 538, *lv denied* 72 NY2d 956).

Concerning County Court's charge as to his second, more incriminating statement, defendant urges that the court's refusal to use the language of CJI 11.10 was fatal. The CJI charge reads as follows:

"I instruct you that the defendant has no burden to prove that he did not make the statement.

"The burden of proof to establish that the defendant did make the statement is on the People. The People must prove that fact to your satisfaction beyond a reasonable doubt."

In charging the jury on the second statement, County Court instructed the jury that defendant had no burden to prove that he did not make the statement, and that it could not be considered unless the People established that the statement was actually made to the police. While not including the phrase "beyond a reasonable doubt" with respect to the People's obligation to prove that the statement was made, the court elsewhere clearly relayed that the People were required to establish defendant's guilt beyond a reasonable doubt. We are satisfied that, viewing the court's instructions in their entirety, they adequately set forth the legal standards which the jury was required to apply in evaluating defendant's statements (*see, generally*, *People v Lopez*, 187 AD2d 383, *lv denied* 81 NY2d 843; *People v Bowen*, 134 AD2d 356, 357, *lv denied* 70 NY2d 929). While the jury must be instructed, as they were here, that the People are required to prove every element of every offense beyond a reasonable doubt, there is no requirement that they be instructed that every fact established at trial must be

proven beyond a reasonable doubt (*see, People v Man Lee Lo*, 118 AD2d 225).

As to causation, County Court instructed the jury that it was sufficient to find that defendant's actions "forged a link in the chain of causes which actually caused death". Defendant complains that by refusing to use the standard CJI instruction and his suggested language from *Matter of Anthony M.* (63 NY2d 270), accepting instead the People's modified charge, the court left the jury to work with an overly broad and ultimately prejudicial instruction on causation. We believe that when viewed in its entirety (*see, People v Coleman*, 70 NY2d 817, 819), the court's instructions adequately conveyed the appropriate legal standard.

While we agree with defendant's assertion that it was improper for the prosecutor to tell the jury in summation that "[y]ou don't even have to leave your seats * * * to convict [defendant] of felony murder", in derogation of its obligation to duly deliberate upon the evidence, defendant's right to a fair trial was not compromised thereby. County Court clearly instructed the jury as to its role as factfinder and its responsibility to extend due deliberations to all the evidence presented when determining defendant's guilt or innocence.

We also reject defendant's claim that County Court erred in denying his motion to vacate the judgment based upon juror misconduct. Defense counsel averred that after the verdict, a juror contacted him and stated that she would not have voted to convict defendant had he testified that he did not touch or use the hammer alleged to have been the murder weapon. This statement, defendant asserts, establishes the juror's disregard of the court's instruction that no adverse inference could be drawn from defendant's failure to testify. Notably, however, defendant acknowledged that the juror's claimed misconduct did not result from any external influence, implicating the rule that "jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct" (*People v De Lucia*, 15 NY2d 294, 296, *cert denied* 382 US 821). Moreover, that the juror postulated her verdict would have been otherwise had defendant testified does not inherently establish that her verdict derived from an unfavorable inference based on his failure to testify, instead of the evidence presented, particularly in view of the presumption that jurors will adhere to the court's instructions during deliberation (*see, People v Gonzalez*, 155 AD2d 310, *lv denied* 75 NY2d 813).

We do agree, however, that defendant's sentence must be modified because County Court erred in imposing consecutive

sentences for the depraved indifference murder count and the robbery counts. "[S]entences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other" (*People v Laureano*, 87 NY2d 640, 643). That count of the indictment charging defendant with depraved indifference murder alleged that he caused the death of the victim by striking him repeatedly about the head and body with a hammer while committing robbery. The robbery in the first degree count of the indictment, requiring the use or threatened use of a dangerous instrument, alleged that defendant used physical force upon the victim by striking him about the head with a hammer. Consequently, the convictions arose out of a single act, the striking of the victim with the hammer, and consecutive sentences are therefore impermissible.

Crew III, Yesawich Jr., Spain and Mugglin, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as sentenced defendant to consecutive sentences for the crimes of murder in the second degree pursuant to Penal Law § 125.25 (2) and robbery in the first and second degrees; it is directed that the sentences imposed on these convictions are to run concurrently with each other; and, as so modified, affirmed.