■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUSSELL L. HEESH, Appellant. [941 NYS2d 767]—

Garry, J. Appeal from a judgment of the County Court of Delaware County (Becker, J.), rendered June 14, 2010, upon a verdict convicting defendant of the crime of reckless endangerment in the first degree (two counts).

In March 2009, defendant's girlfriend moved from his home, where she had resided for approximately four months, to return to the home she owned with another man, with whom she had previously been romantically involved (hereinafter the paramour). On the night after her move, multiple gunshots were fired through a window of their home into a bedroom where the girlfriend and the paramour were sleeping. Defendant was subsequently charged with two counts of reckless endangerment in the first degree and five counts of criminal possession of a weapon in the fourth degree.

Following a jury trial in January 2010, defendant was convicted upon the five criminal possession charges, but the jury was unable to reach a verdict as to the two reckless endangerment charges. County Court sentenced defendant to concurrent one-year prison terms upon the convictions, and declared a mistrial as to the remaining charges. In May 2010, a second jury convicted defendant upon the reckless endangerment counts. He was sentenced in June 2010 to two prison terms of 2 to 6 years, to run concurrently to each other and consecutively to the prior sentence. Defendant appeals.

Initially, defendant's challenges relative to the January 2010 criminal possession convictions may not be addressed. The notice of appeal was directed solely to the May 2010 convictions and subsequent sentences; defendant neither appealed from the earlier judgment nor moved for an extension of time to take such an appeal (see CPL 460.10 [1] [a]; 460.30 [1]; People v Dabo, 82 AD3d 485 [2011], lv denied 16 NY3d 858 [2011]; People v Moore, 194 AD2d 32, 34 [1993], lv denied 83 NY2d 856 [1994]).

As to the May 2010 convictions, defendant contends that his statements to police were coerced and should have been suppressed. Whether a statement is voluntary is a factual question to be determined from the totality of the circumstances (see People v Pouliot, 64 AD3d 1043, 1044 [2009], lv denied 13 NY3d 838 [2009]; People v Button, 56 AD3d 1043, 1044 [2008], lv dismissed 12 NY3d 781 [2009]; People v Bridges, 16 AD3d 911, 912 [2005], lv denied 4 NY3d 884 [2005]). At the Huntley hearing, a police investigator testified that she gave Miranda warnings to defendant immediately after he was taken into custody,

and defendant confirmed that he understood the warnings and consented to speak with police. She testified that, during subsequent questioning, defendant never asked to speak with an attorney nor invoked his right to remain silent, he was offered food and drink, and he was permitted to spend time with family members and, upon his request, to speak with a senior investigator. Defendant initially denied any involvement in the shooting but eventually made several incriminating admissions. Both investigators who spoke with defendant testified that, although they could smell alcohol on his person, he did not appear to be intoxicated and was able to respond to questions without difficulty. Defendant acknowledged that he was given *Miranda* warnings, but alleged that he could not hear them because another officer was speaking at the same time. He testified that he never waived his *Miranda* rights, that he requested counsel at least twice, that an officer "kind of yell[ed] at [him]" during the interview, and that he was "[v]ery intimidated." Notably, despite his claim that he could not hear the investigator's warnings, defendant acknowledged that he was aware of his *Miranda* rights from numerous previous arrests (*compare People v McLean*, 59 AD3d 861, 863 [2009], *affd* 15 NY3d 117 [2010]). Resolution of the conflicting testimony required credibility determinations by County Court, to which this Court defers; upon review we find no reason to disturb the determination (*see People v Byron*, 85 AD3d 1323, 1324 [2011], *lv denied* 17 NY3d 857 [2011]; *People v Kuklinski*, 24 AD3d 1036, 1036-1037 [2005], *lv denied* 7 NY3d 758 [2006]).[1]

We find that defendant's reckless endangerment convictions were supported by legally sufficient evidence. A person is guilty of reckless endangerment in the first degree when, "under circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25). The girlfriend testified that she and defendant were involved in a confrontation on the day before the incident. A State Trooper testified that during a telephone call that evening, defendant told him that "he was going [to] do something stupid and end up in jail the next morning." Another State Trooper testified that on the same evening, defendant stated that "[the police] might as well come and arrest him now, he was going to do something stupid." Recordings of these calls were played for the jury. The par-

---

**1.** Defendant also challenges County Court's *Sandoval* rulings, but the issues he raises relate exclusively to the first trial; no evidence of prior convictions was introduced during the second trial. Accordingly, these contentions are not addressed.

amour testified that during the two days before the incident, defendant threatened him during a telephone call and twice drove into the paramour's driveway—once in a gold Honda Accord—and then rapidly drove away again. On the night of the incident, immediately after the shots were fired, the paramour saw a gold Honda Accord exiting the driveway, and he identified a photograph of a car at defendant's home as the same vehicle.[2]

Police investigators testified that they found projectile holes in the victims' window, bullets in their bedroom ceiling, and spent .22 casings in their driveway. Spent .22 casings were also found in the backseat of defendant's Honda Accord, a box of the same kind of ammunition was found in his gun cabinet, and a .22 caliber semi-automatic rifle was found partially hidden under his couch. A firearms expert testified that test casings fired from this rifle "agreed" with the casings found by police, although no definitive identification could be made. Police investigators testified that defendant told them, among other things, that he had awoken on the morning after the incident with the empty rifle beside him, though he normally kept it loaded, that "he knew he had done it," and that he vaguely remembered being at the bottom of the victims' driveway, getting out of his car and shooting rapidly "up in the air like . . . warning shots." Despite exculpatory testimony offered by defendant, the girlfriend and his daughter, we have no difficulty in concluding that, viewed in the light most favorable to the People, the evidence provides a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Vargas*, 60 AD3d 1236, 1237-1238 [2009], *lv denied* 13 NY3d 750 [2009]; *People v Tillman*, 57 AD3d 1021, 1024 [2008]; *People v Yellen*, 30 AD3d 634, 635-636 [2006], *lv denied* 8 NY3d 951 [2007]).

Defendant next asserts that he was deprived of a fair trial when the prosecutor played audio recordings of cell phone messages from defendant to the girlfriend during summation and then explained the content of the messages, which were difficult to hear. The recordings had previously been admitted into evidence without objection, but had not been played for the jury. Defendant contends that the prosecutor improperly made himself an unsworn witness by offering his personal interpretation (*see generally People v Moye*, 12 NY3d 743, 744 [2009]; *People v Colon*, 307 AD2d 378, 381 [2003], *lv denied* 100 NY2d

---

**2.** The girlfriend, who had resumed her romantic relationship with defendant by the time of trial, also identified this vehicle as belonging to defendant or his daughter, but claimed that it was inoperable at the time of the incident.

619 [2003]). This issue was not preserved by the general objection of defense counsel before the messages were played; though defendant now contends that a hearing, curative instruction or mistrial was required, there was no such request made, nor was there any specific objection to the prosecutor's interpretation (*see People v Tonge*, 93 NY2d 838, 839 [1999]; *People v Delosh*, 2 AD3d 1047, 1049-1050 [2003], *lv denied* 1 NY3d 626 [2004]). In any event, the record reveals that the prosecutor's translation was reasonably accurate and the content was not inflammatory. Further, the jury was expressly instructed before summation that the remarks of counsel did not constitute evidence, and we may presume that this instruction was followed (*see People v Baker*, 14 NY3d 266, 273-274 [2010]; *People v Foss*, 267 AD2d 505, 510 [1999], *lv denied* 94 NY2d 947 [2000]). Therefore, were we to consider the alleged error, we would find it harmless, and no modification is required in the interest of justice (*see People v Morgan*, 66 NY2d 255, 259 [1985]; *People v McAllister*, 264 AD2d 742, 743 [1999], *lv denied* 94 NY2d 882 [2000]; *compare People v Francis*, 58 AD3d 1015, 1015-1016 [2009]).

Finally, we reject defendant's contention that his sentence is harsh and excessive. As County Court noted, defendant fired seven shots at night into a home that was occupied by the victims and several other people, including a two-year-old child. In view of the premeditated nature of this violent act, defendant's extensive criminal history, and his failure to accept responsibility for his actions, we find no abuse of discretion or extraordinary circumstances warranting a reduction of his sentence (*see People v Mann*, 63 AD3d 1372, 1374 [2009], *lv denied* 13 NY3d 861 [2009]; *People v Lozada*, 35 AD3d 969, 971 [2006], *lv denied* 8 NY3d 947 [2007]).

Peters, J.P., Rose, Lahtinen and Stein, JJ., concur. Ordered that the judgment is affirmed.