Egan Jr., J.
We affirm. Initially, we reject defendant’s assertion that County Court erred in denying her motion to suppress her written statement. “Whether a statement is voluntary is a factual question to be determined from the totality of the circumstances” (People v Heesh, 94 AD3d 1159, 1160 [2012] [citations omitted], lv denied 19 NY3d 961 [2012]; see People v Button, 56 AD3d 1043, 1044 [2008], lv dismissed 12 NY3d 781 [2009]), and the suppression court’s credibility determinations, if supported by the record as a whole, will not be disturbed (see People v Button, 56 AD3d at 1044; People v Davis, 18 AD3d 1016, 1017 [2005], lv denied 5 NY3d 805 [2005]).
Here, Nicholas DeMuth, one of the investigators assigned to the case, testified at the Huntley hearing that defendant voluntarily accompanied him to the Chemung County Sheriff’s Department in June 2010 to discuss a May 20, 2010 fire involving her husband’s truck. Upon arrival, defendant was advised of her Miranda warnings and, after executing a written waiver thereof, elected to proceed with questioning. After being advised that her account of the subject fire was inconsistent with certain forensic evidence, defendant admitted her involvement in each of the seven fires charged in the indictments. At this point, DeMuth provided defendant with photos of the various fires, upon which she placed certain notations and her initials. De *1485 fendant then provided a written statement, which she subsequently reviewed and signed. DeMuth testified that at no point during the approximately five hours of questioning was defendant handcuffed, restrained or threatened in any manner, nor did she ask to stop the interview or request an attorney. Finally, DeMuth stated that during this time, defendant was offered and took a number of cigarette and bathroom breaks. Although defendant’s daughter presented a contrary account, contending that defendant was threatened with the arrest of her grandson if she did not admit to her involvement in the fires, County Court credited DeMuth’s testimony and deemed defendant’s statement to be voluntary. Upon our review of the record, we discern no basis upon which to disturb County Court’s finding (see People v Pouliot, 64 AD3d 1043, 1045-1046 [2009], lv denied 13 NY3d 838 [2009]; People v Button, 56 AD3d at 1044; People v Davis, 18 AD3d at 1017).
Defendant’s challenge to the legal sufficiency and weight of the evidence is equally unpersuasive. Defendant was convicted of three counts of arson in the third degree stemming from her involvement in a May 12, 2009 garage fire at 763 Cedar Street in the Town of Southport, Chemung County, a September 23, 2009 fire at nearby 761 Cedar Street and the May 20, 2010 fire involving her husband’s truck. “A person is guilty of arson in the third degree when he [or she] intentionally damages a building or motor vehicle by starting a fire or causing an explosion” (Penal Law § 150.10 [1]). Where, as here, a defendant has confessed to a crime, he or she “may not be convicted . . . solely upon evidence of a confession or admission made by him [or her] without additional proof that the offense charged has been committed” (CPL 60.50). Such additional proof, however, “need not establish guilt or every detail of the crime or confession” (People v Johnson, 79 AD3d 1264, 1266 [2010], lv denied 16 NY3d 832 [2011]); rather, the corroboration requirement “is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone” (People v Daniels, 37 NY2d 624, 629 [1975]; accord People v Thompson, 75 AD3d 760, 764 [2010], lv denied 15 NY3d 893, 894, 896 [2010]; see People v Baltes, 75 AD3d 656, 659 [2010], lv denied 15 NY3d 918 [2010]; People v Brown, 20 AD3d 577, 578 [2005], lv denied 5 NY3d 826 [2005]). “The necessary additional evidence may be found in the presence of defendant at the scene of the crime ... or other circumstances supporting an inference of guilt” (People v Baltes, 75 AD3d at 659 [internal quotation marks and citation omitted]).
Defendant initially captured the attention of local law enforce *1486 ment because each of the subject fires occurred in close proximity to her residence on Cedar Street[2] and, for many of those fires, defendant either initiated the underlying 911 call, was a witness to the fires or provided other information regarding the fires. With respect to the May 2009 garage fire at 763 Cedar Street, defendant’s written statement reveals that she used her cigarette lighter to set fire to the interior of her neighbor’s garage on that date, following which she returned home and called 911. Defendant admittedly was home on the night of the fire, the origin of the fire was consistent with defendant’s prior written description thereof and the property owner testified that, in addition to notifying him of the fire on the night in question, defendant approached him the following day and expressed an interest in purchasing the property. As to the September 23, 2009 fire at 761 Cedar Street, defendant’s written statement indicates that she approached the back porch of that residence and, after sliding open a window, used her cigarette lighter to set fire to a set of sheer curtains — curtains that she had left behind when she and her husband moved back into their rebuilt home. According to defendant’s statement, as she returned to her residence, she could hear the smoke alarm going off and called the Sheriffs Department.
Two State Troopers, Nicholas Medina and Jason Fifield, responded to the scene and were met in the middle of the street by defendant’s husband. Although defendant would later tell Fifield that she had heard the smoke alarm from inside her own kitchen, both Fifield and Medina testified that they did not hear the alarm when they exited their vehicles and could not hear it until they actually approached the residence at 761 Cedar Street. As Medina neared and peered through the open window on the back porch at that location, he saw the fire directly beneath the window and returned to his vehicle to retrieve a fire extinguisher. Although a set of fingerprints lifted from the scene did not match exemplars taken from defendant, defendant’s trial testimony places her in the general vicinity of the fire on the night in question and her husband’s testimony places her outside of their residence shortly before reporting to him that she could hear some sort of alarm sounding. Additionally, both Medina’s testimony as to the location of the fire and Fifield’s observation of a melted curtain near the rear window were consistent with defendant’s prior written description of the manner in which she started the fire.
*1487 Finally, as to the May 20, 2010 truck fire at defendant’s residence, defendant’s written statement reflects that she used the keys to unlock her husband’s truck and, while looking for a sweatshirt, noticed some school papers belonging to her grandson lying on the back seat of the vehicle. Defendant then used the cigarette she was smoking to set fire to the papers and, according to defendant, the fire then spread to the center console area and rear floor board. After closing (and apparently relocking) the door, defendant walked over to the fence line on her property and struck up a conversation with her neighbors. Shortly thereafter, one of the neighbors noticed the fire, retrieved the keys from defendant, unlocked the door to the truck and extinguished the fire with a garden hose.
The next-door neighbor recounted her conversation with defendant that evening and attested to her role in extinguishing the fire. Another neighbor also testified that, on the evening in question, he observed that the truck belonging to defendant’s husband was parked near defendant’s rear property line — quite some distance from the house. According to this neighbor, the location of the truck that evening was atypical, as the vehicle usually was parked right behind defendant’s residence. Additionally, the fire investigator who examined the truck noted the extensive damage to the rear of the center console and opined — consistent with defendant’s prior statement — that this was where the fire had originated. The investigator, who ruled out all natural and/or accidental causes of the fire, further testified that if papers had been set on fire underneath or near the rear of the center console/armrest, that would be consistent with a possible cause of the fire.
In light of the foregoing, and based upon our review of the record as a whole, we are satisfied that defendant’s written statement was sufficiently corroborated by, among other things, her proximity to the fires on the nights in question, the testimony adduced regarding the actual location and origin of the fires and defendant’s otherwise curious or suspicious behavior either at the time of or immediately following these three fires. Hence, we discern no basis upon which to disturb the jury’s verdict as to these counts.
We reach a similar conclusion regarding the verdict convicting defendant of attempted arson in the third degree, which stemmed from a fire in a recycling bin located on the rear porch of 753 Spruce Street, located to the rear of defendant’s property. According to defendant’s written statement, on the evening of October 10, 2009, she entered the rear porch of that residence and, using her cigarette lighter, set fire to some cardboard and *1488 papers inside of a recycling bin.[3] As defendant was reentering her back yard, she heard someone on the rear porch of the Spruce Street residence and returned to discover the homeowner dousing the fire with a jug of water. Defendant then used some dirt to help put out the fire, returned home and called 911.
A Chemung County Sheriff’s Deputy testified that he responded to a call from defendant’s residence and, upon arriving, was advised by defendant that she could smell smoke in the air. The deputy traced the smell to a nearby campfire and then returned to report his discovery to defendant, at which time defendant advised him of the fire at 753 Spruce Street. The investigator followed defendant to that address and observed some charred cardboard on the porch floor next to the recycling bin. Additional personnel were summoned to the scene, and one of the investigators recovered a cigarette butt — apparently of recent vintage. DNA analysis of that cigarette butt matched the DNA present on a buccal swab subsequently obtained from defendant. Such proof, in our view, is more than sufficient to corroborate defendant’s written statement and sustain her conviction of attempted arson in the third degree. Defendant’s remaining contentions, including her assertion that the sentence imposed is harsh and excessive, have been examined and found to be lacking in merit.
Peters, P.J., Spain, Kavanagh and McCarthy, JJ., concur. Ordered that the judgment is affirmed.

. In January 2009, a fire destroyed defendant’s residence at 762 Cedar Street and, in or about April 2009, she and her husband relocated to rental property across the street at 761 Cedar Street. In mid-August 2009, defendant and her husband returned to their newly rebuilt house at 762 Cedar Street.

. Immediately prior to this, defendant was on her own back porch smoking a cigarette.