Spain, J.
Appeal from a judgment of the County Court of St. Lawrence County (Richards, J), rendered January 30, 2012, *995 upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree.
On May 11, 2010, defendant’s estranged wife, Kelly Bonnar, reported to the St. Lawrence County Sheriffs Office an incident earlier in the day in which defendant confronted her with a firearm in the house where they continued to cohabit. The Sheriffs Office obtained and executed a search warrant at the residence and placed defendant in custody; Bonnar secured their dogs to allow deputies to enter the residence to conduct a search for the firearm. While Bonnar was using a bathroom in the residence, the toilet would not operate and she discovered the firearm in the toilet tank and notified the deputies. Defendant was subsequently charged by indictment with criminal possession of a weapon in the third degree and menacing in the second degree. After suppression hearings, County Court denied defendant’s motion to suppress his statements to a deputy during the execution of the search warrant, and rejected his challenges to the search warrant and to the search of the residence, in written decisions. Following a jury trial, defendant was convicted of the weapon possession count. Sentenced as a second felony offender to a prison term of 3 to 6 years, defendant appeals.
Initially, defendant challenges County Court’s ruling, after a Molineux hearing, which allowed the People to elicit testimony from Bonnar regarding defendant’s purchase of the gun and prior incidents of domestic violence. “Evidence of . . . prior uncharged crime[s] [or prior bad acts] may not be admitted solely to demonstrate a defendant’s bad character or criminal propensity, but may be admissible if linked to a specific material issue or fact relating to the crime[s] charged, and if [their] probative value outweighs [their] prejudicial impact” (People v Blair, 90 NY2d 1003, 1004-1005 [1997] [citation omitted]; see People v Alvino, 71 NY2d 233, 241-242 [1987]). Testimony that defendant had purchased the gun in another state in 2006 and subsequently used or displayed it in this state in 2007 and 2008 during three domestic incidents was relevant and probative of a material element of a crime charged, namely, defendant’s knowing possession of the gun (see Penal Law § 265.02 [3]; People v Echavarria, 53 AD3d 859, 863 [2008], lv denied 11 NY3d 832 [2008]; People v Wright, 5 AD3d 873, 875-876 [2004], lv denied 3 NY3d 651 [2004]). Further, defense counsel put that element in issue in his opening statement and throughout the trial, by pursuing the defense that it was Bonnar, not defendant, who had purchased the gun out of state, and that she had planted it in the toilet to force defendant’s departure from the house that *996 they continued to share. Also, defendant testified at trial that he had arranged for her to purchase the gun and had been unaware of its whereabouts since 2009 and disclaimed possessing it (see People v Echavarria, 53 AD3d at 863).
We also find no error in County Court permitting Bonnar to offer limited testimony of prior incidents of domestic violence in which, like the menacing crime charged, defendant displayed, pointed or used the gun. This evidence was relevant to material issues aside from propensity, including defendant’s intent and motive to instill fear in Bonnar (see Penal Law § 120.14 [1]), the absence of mistake, and as relevant but circumscribed background information (see People v Westerling, 48 AD3d 965, 966 [2008]; People v Doyle, 48 AD3d 961, 963-964 [2008], lv denied 10 NY3d 862 [2008]; People v Betters, 41 AD3d 1040, 1041-1042 [2007]; People v Poquee, 9 AD3d 781, 782 [2004], lv denied 3 NY3d 741 [2004]; People v Mathias, 7 AD3d 824, 825-826 [2004]). The court excluded numerous other preferred instances of domestic violence and prior bad acts after carefully and appropriately weighing the probative value of the testimony against its prejudicial effect (see People v Blair, 90 NY2d at 1004-1005; People v Doyle, 48 AD3d at 964). While a contemporaneous limiting instruction is preferred (see People v Burkett, 101 AD3d 1468, 1471 n 3 [2012], lv denied 20 NY3d 1096 [2013]), none was requested, and the court gave such an instruction shortly after Bonnar’s testimony and in its final charge.
Next, the suppression testimony amply supports County Court’s finding, after a Huntley hearing, that the People proved beyond a reasonable doubt that defendant’s statements to police were voluntarily made after a valid and knowing waiver of his Miranda rights (see People v Mattis, 108 AD3d 872, 874 [2013], lv denied 22 NY3d 957 [Oct. 7, 2013]; People v Culver, 69 AD3d 976, 976-977 [2010]). “Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances [and] [t]he credibility assessments of the suppression court . . . are entitled to [great] deference” (People v Mattis, 108 AD3d at 874 [internal quotation marks and citation omitted]; see People v Culver, 69 AD3d at 977). Sheriff’s Deputy Shawn Wells testified that prior to the search of the residence, defendant was handcuffed and placed in the police vehicle. When Wells read the Miranda warnings the first time, defendant did not respond when asked if he understood, prompting Wells to read them a second time, to which defendant responded “yes” when asked if he understood. After the gun was located, Wells asked defendant why he needed the firearm, and defendant replied that he needed it for “protection” and made certain *997 admissions. We discern no basis upon which to disturb the court’s voluntariness finding in that regard.
To the extent that defendant claims that he unequivocally asserted his right to remain silent each time he was read his rights, County Court expressly credited Well’s testimony that he never did so, and expressly discredited defendant’s testimony that he did. Deferring to the court’s factual and credibility determinations, we find no error in its determination that defendant did not unequivocally invoke his right to remain silent, which right was not violated, and in its denial of his motion to suppress his statement (see People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]; People v Horton, 46 AD3d 1225, 1226-1227 [2007], lv denied 10 NY3d 766 [2008]; People v Caruso, 34 AD3d 860, 862 [2006], lv denied 8 NY3d 879 [2007]; cf. People v Johnson, 106 AD3d 1272, 1274-1277 [2013], lv denied 21 NY3d 1043 [2013]).
Finally, defendant’s contention that the gun should have been suppressed on the ground that Bonnar’s discovery of it tainted the search is unpreserved, as it was not raised at the suppression hearing or at trial (see CPL 470.05 [2]). We decline to take corrective action in the interest of justice, given that the suppression testimony established that Bonnar did not “participate” in the execution of the search warrant but, rather, inadvertently came upon the gun in the residence during the deputies’ execution of the search warrant; the deputies in all likelihood would have discovered the gun and, moreover, Bonnar resided in the home and had every right to tell the deputies where it was located. Further, the scope of the search warrant was not exceeded as a result of her discovery, which did not render the search improper (see People v Charlier, 136 AD2d 862, 864-865 [1988]). Defendant had a full opportunity to argue to the jury at trial that Bonnar owned the gun and planted it in order to rid herself of his presence.
Lahtinen, J.P., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.