Stein, J.
Appeal from a judgment of the Supreme Court (Lamont, J.), rendered November 17, 2010 in Albany County, (1) upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree and (2) convicting defendant upon his plea of guilty of the crime of criminal use of a firearm in the first degree.
On the evening of July 15, 2009, defendant was standing with a group of people next to his sister’s BMW station wagon outside of 326 First Street in the City of Albany. Defendant allegedly used a .380 caliber handgun to fire a shot into the driver’s side window of the locked vehicle in an attempt to retrieve his sister’s keys from inside. Sean Slingerland, a plain-clothes police officer who had been driving down First Street in an unmarked police car, heard the shot and observed defendant holding the gun. Slingerland stopped his car in front of the BMW and radioed to other officers that shots had been fired. While the details of what occurred next are in dispute, it is clear that Slingerland exited his vehicle and drew his weapon and that shots were fired. By Slingerland’s account, defendant fired a shot at him, causing him to return fire. Defendant then fled the scene and discarded his gun. He was ultimately apprehended and his weapon was recovered.
Defendant was subsequently charged in a five-count indictment with attempted murder in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree. Before trial, Supreme Court *1003 dismissed the charge of criminal possession of a weapon in the third degree. At the conclusion of trial, the jury was hung as to the charges of attempted murder in the second degree and criminal use of a firearm in the first degree, but found defendant guilty of one count of criminal possession of a weapon in the second degree and not guilty of the other count.[1]
The People elected to retry defendant on the charges of attempted murder and criminal use of a firearm. However, before the retrial commenced, defendant entered an Alford plea to the charge of criminal use of a firearm in the first degree in satisfaction of the remaining two charges against him and waived his right to appeal. Defendant was thereafter sentenced as a second violent felony offender to concurrent prison terms of 15 years for the conviction of criminal possession of a weapon in the second degree and 18 years for the conviction of criminal use of a firearm in the first degree, plus five years of postrelease supervision on each conviction. Defendant now appeals, and we affirm.
As an initial matter, Supreme Court properly denied defendant’s motion to suppress the oral statements he gave to police upon his arrest. Defendant asserts that he was intoxicated when he made such statements and that he did not voluntarily waive his Miranda rights. “Whether a statement is voluntary is a factual question to be determined from the totality of the circumstances” (People v Heesh, 94 AD3d 1159, 1160 [2012], lv denied 19 NY3d 961 [2012] [citations omitted]; see People v Kidd, 112 AD3d 994, 996 [2013]). A defendant’s intoxication at the time that he or she makes a statement while in police custody is one factor to be considered in determining voluntariness (see People v Schompert, 19 NY2d 300, 305 [1967], cert denied 389 US 874 [1967]; People v Baugh, 101 AD3d 1359, 1360 [2012], lv denied 21 NY3d 911 [2013]). Standing alone, a defendant’s intoxication will only render a confession involuntary when “ ‘the degree of inebriation has risen to the level of mania or to the level where the defendant is unable to comprehend the meaning of his or her words’ ” (People v Scott, 47 AD3d 1016, 1020 [2008], lv denied 10 NY3d 870 [2008], quoting People v Williams, 40 AD3d 1364, 1365 [2007], lv denied 9 NY3d 927 [2007]; see People v Carelli, 41 AD3d 1092, 1093 [2007]).
Here, after defendant was arrested, he was brought to the police station and placed in an interrogation room. Michael Bennett, the first officer to question defendant there, testified at *1004 the Huntley hearing that he learned from defendant’s sister, Erin Dale, that defendant had been drinking and acting recklessly before he came into police custody.[2] However, when Bennett entered defendant’s interrogation room, he found defendant sleeping and did not smell alcohol on him. After defendant awoke, he began reciting his Miranda rights, but Bennett interrupted defendant, personally read defendant his Miranda rights and asked defendant if he understood those rights. Defendant responded that he did and questioning ensued. Defendant then made multiple incriminating statements regarding the incident, but refused to provide a written statement. While defendant had been drinking, the totality of Bennett’s testimony — which Supreme Court found to have “the general force and flavor of credibility” — belies the assertion that he was so “inebriated as to be incapable of understanding what he was saying” (People v Dobranski, 112 AD2d 541, 542 [1985], lv denied 66 NY2d 614 [1985]; see People v Schompert, 19 NY2d at 305; People v Kenyon, 108 AD3d 933, 936 [2013], lv denied 21 NY3d 1075 [2013]; People v Baugh, 101 AD3d 1359, 1361 [2012], lv denied 21 NY3d 911 [2013]).
Nor is there any other factor evidenced by the record that would lead us to conclude that defendant’s statements were not voluntary. Although defendant was arrested at 10:30 p.m., the interrogation did not begin until 3:30 a.m. and lasted only IV2 hours. While he was in custody, defendant was offered food and water, was able to sleep and never asked to speak with an attorney (see People v Heesh, 94 AD3d at 1160-1161). Under these circumstances, and according great deference to Supreme Court’s credibility determinations (see People v Kidd, 112 AD3d at 996), we find that the record supports the conclusion that defendant’s statements were voluntarily made (see People v Baugh, 101 AD3d at 1361; People v Heesh, 94 AD3d at 1161; People v Munck, 92 AD3d 63, 68-69 [2011]; People v Pendelton, 90 AD3d 1234, 1236 [2011], lv denied 18 NY3d 996 [2012]).
We also reject defendant’s contention that the verdict was against the weight of the evidence. To convict defendant of criminal possession of a weapon in the second degree, the People were required to prove beyond a reasonable doubt that he possessed a loaded firearm at a location other than his home or place of business “with intent to use the same unlawfully against another” (Penal Law § 265.03 [1]; see Penal Law § 265.03 [1] Ob]; [3]; People v Hawkins, 110 AD3d 1242, 1242 *1005 [2013], lv denied 22 NY3d 1041 [2013]). The intent to use a weapon unlawfully may be inferred from a defendant’s actions and the surrounding circumstances (see People v Brown, 100 AD3d 1035, 1036-1037 [2012], lv denied 20 NY3d 1009 [2013]; People v Molina, 79 AD3d 1371, 1376 [2010], lv denied 16 NY3d 861 [2011]). Further, as relevant here, justification acts as an affirmative defense to criminal possession of a weapon in the second degree, allowing a defendant, who was not the initial aggressor, to defend himself or herself with deadly force provided that safe retreat is not possible (see Penal Law § 35.15 [1], [2] [a] [i]; People v Byrd, 79 AD3d 1256, 1258 [2010]). Defendant argues here that the People failed to prove beyond a reasonable doubt that he intended to use the gun unlawfully because he did not fire at Slingerland. Defendant further asserts that, even if he had fired at Slingerland, he would have been justified in doing so because Slingerland did not identify himself as a police officer when he exited his vehicle and defendant thought he was in danger when Slingerland raised his weapon. We are not persuaded.
To establish the requisite intent, the People proffered, among other things, the testimony of several police officers — including Slingerland and others who responded to the scene and investigated the incident — to prove that defendant raised his weapon and fired at Slingerland. Slingerland testified that he heard a gun shot and saw defendant standing next to the car with a gun in his hand. He then pulled his car over, got out of his vehicle, drew his weapon and said something to defendant.[3] Slingerland observed defendant raise his gun and then saw a muzzle flash when defendant fired. Slingerland also testified that he and defendant were acquainted with one another, that defendant called him by his first name and that he was wearing his badge in a visible location on the night of the incident. Certain eyewitnesses confirmed Slingerland’s account that defendant fired at him, while others claimed that only Slingerland fired his weapon. One witness testified that he had seen defendant with a loaded gun the day before the incident, yet the evidence showed that it was empty when it was recovered after defendant fled the scene and dropped it. Additionally, a police detective test fired the pistol that was recovered from defendant and concluded that it was operable when it was in his posses *1006 sion. The police also found two .380 caliber shell casings in the area of Dale’s vehicle, and a forensic firearm investigator testified that it was his opinion that these two rounds had been fired from defendant’s weapon. Moreover, a forensic officer with training in ballistic reconstruction examined Slingerland’s vehicle and found a hole in the windshield that he believed to have traveled from defendant’s direction.
With regard to defendant’s statements to the police, Bennett testified at trial that he told defendant that Slingerland had explained what had happened from his perspective, and defendant responded that whatever Slingerland said was probably what happened. Defendant did not recall how the window of his sister’s BMW was shattered, but did recall that the man who exited the other vehicle — presumably Slingerland—yelled “Jose Dale, freeze.” Defendant praised Slingerland’s decision not to shoot all of his bullets at defendant, even though that is what defendant would have done. Defendant also told Bennett about an incident that occurred several days earlier when an officer approached defendant as he stood next to a dice game on the street; defendant said that he had a gun on him and if the officer “had told him to get to the wall that he would have done whatever he had to do to get out of [that situation].” Despite some contradictory evidence regarding the subject events, the jury’s verdict reflects that it rejected defendant’s justification defense and his claim that he did not fire his weapon at Slingerland. While a different verdict would not have been unreasonable, when we view the trial evidence in a neutral light, along with the rational inferences to be drawn therefrom, and defer to the credibility determinations made by the jury, we find the verdict to be in accord with the weight of the evidence (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Mercado, 113 AD3d 930, 932-933 [2014]; People v Burden, 108 AD3d 859, 860 [2013]).
Defendant also argues that the verdict was repugnant. However, defendant declined Supreme Court’s specific invitation at trial to challenge the verdict on this basis.[4] Because defendant did not make his repugnancy claim before the jury was discharged, when Supreme Court would have had the opportunity to address it (see People v Henehan, 111 AD3d 1151, 1152 [2013]; People v Smith, 89 AD3d 1126, 1131 [2011], lv denied 18 NY3d 962 [2012]; People v Coville, 73 AD3d 1232, 1232 [2010]), he failed to preserve such claim for our review (see People v Hawkins, 110 AD3d at 1244; People v McCottery, *1007 90 AD3d 1323, 1326 [2011], lv denied 19 NY3d 975 [2012]; compare People v Watson, 20 NY3d 182, 188 [2012]), and we discern no basis to exercise our interest of justice jurisdiction (see People v Rolfe, 83 AD3d 1217, 1218 [2011], lv denied 17 NY3d 809 [2011]; People v Pearson, 69 AD3d 1226, 1227 [2010], lv denied 15 NY3d 755 [2010]).
Similarly unpreserved is defendant’s claim that his Alford plea to criminal use of a firearm in the first degree was not knowingly, voluntarily and intelligently made, as the record does not reflect that defendant made an appropriate postallocution motion on that basis, and the narrow exception to the preservation rule is not applicable (see People v Fallen, 106 AD3d 1118, 1119 [2013]; People v Bates, 83 AD3d 1110, 1112 [2011], lv denied 21 NY3d 1072 [2013]). Were this issue properly before us, we would find it to be lacking in merit because the plea allocution sets forth “strong record evidence of actual guilt” and Supreme Court’s extensive questioning “demonstrated that defendant’s plea was knowingly and voluntarily made” (People v Bates, 83 AD3d at 1113 [internal quotation marks and citation omitted]; see People v Ture, 94 AD3d 1163, 1164 [2012], lv denied 19 NY3d 968 [2012]).
Defendant’s argument that his sentence with respect to the conviction of criminal use of a firearm in the first degree was harsh and excessive is also unavailing, inasmuch as he is precluded by his valid appeal waiver from making such challenge (see People v Orminski, 108 AD3d 864, 866 [2013], lv denied 22 NY3d 958 [2013]; People v Fallen, 106 AD3d at 1119). As to his sentence on the conviction of criminal possession of a weapon in the second degree, considering the nature of the crime and defendant’s extensive criminal history, we perceive neither an abuse of discretion nor the presence of extraordinary circumstances that would warrant modification of the sentence imposed (see People v Mercado, 113 AD3d at 934; People v Hasenflue, 110 AD3d 1108, 1109 [2013]; People v Thomas, 105 AD3d 1068, 1072 [2013], lv denied 21 NY3d 1010 [2013]). To the extent not specifically addressed herein, defendant’s remaining contentions have been considered and found to be lacking in merit.
Peters, EJ., Rose and Egan Jr., JJ., concur.
Ordered that the judgment is affirmed.

. Defendant was convicted of the charge accusing him of shooting at Slingerland and was acquitted of the charge relating to the shot allegedly fired into the BMW

. Indeed, while Bennett was questioning Dale, he could hear defendant “ranting and raving” down the hall, and deduced that defendant was under the influence of alcohol.

. Although Slingerland testified at trial that he could not remember exactly what he said to defendant, during cross-examination Slingerland recounted his grand jury testimony. In that testimony, Slingerland claimed to have yelled out to defendant by name, told him to “freeze,” and started to tell him to get down.

. Despite asking the parties if they wished to raise the issue, Supreme Court noted that it did not consider the verdict to be repugnant.