■ In the Matter of ISMAEL S., a Person Alleged to be a Juvenile Delinquent, Appellant. [623 NYS2d 571] —Order, Family Court, New York County (Bruce M. Kaplan, J.), entered June 14, 1994, which adjudicated respondent a juvenile delinquent upon a finding that he committed an act which, if committed by an adult, would constitute the crime of assault in the second degree (Penal Law § 120.05 [2]), and placed respondent with the New York State Division for Youth until October 31,

1995, unanimously reversed, on the law and the facts, the order is vacated and the petition is dismissed, without costs.

In a delinquency petition filed on July 16, 1993, the presentment agency alleged that respondent Ismael S. committed two felonies and three misdemeanors in connection with an incident which occurred on June 7, 1993 during which Robert Maldonado was slashed across his neck. At the fact-finding hearing conducted on October 26, 1993, Donald Swinton, a foreign editor for Associated Press, testified that as he jogged near Columbus Avenue and 93rd Street he saw a group of people standing in a circle and that a fight was in progress between Maldonado, a large individual in his twenties, and respondent, who was younger, shorter and lighter.

Mr. Swinton stated that Maldonado hit respondent so hard he heard the blow thirty feet away. At that point, respondent recoiled, regained his composure and swung at Maldonado with a cupped hand. Maldonado's neck then started to bleed and respondent as well as two other youths fled the scene. Swinton testified that two of the men in the circle then jumped into a blue van and sped off in the direction the youths had run. Later, Swinton saw one of the men from the van turning respondent over to the Police.

New York City Police Officer Michael Donato testified that he arrived at the scene and approached respondent, who had a black eye and was being attended to by ambulance personnel. Respondent explained that he had been in a fight with Maldonado, which he was losing, and that he picked up a piece of glass from the ground and cut Maldonado's throat. Officer Donato then placed respondent under arrest and arrested Maldonado at the hospital later that evening. At this juncture, the presentment agency rested and respondent moved for a missing witness charge with respect to Maldonado, which was denied.

Respondent called his friend, Noel Cruz, who averred that at approximately 9:00 P.M. on June 7, 1993, he, respondent and another friend, Caesar, were leaving Cruz' apartment building when Maldonado approached and told Cruz to leave his uncle alone. Cruz continued that when respondent attempted to intercede and smooth things over, Maldonado grabbed him, placed him in a headlock and started punching him in the face. The three men with Maldonado formed a circle around the combatants and cheered as Maldonado delivered over 20 blows to respondent's face. Cruz stated that respondent broke free but Maldonado grabbed him again, placed him back in a headlock and resumed punching him.

Cruz testified that the men with Maldonado would not let him or Caesar interfere and that two of the men began to kick respondent in the ribs and back. While still on the ground, respondent allegedly picked up a piece of glass and swung at Maldonado, cutting him. Respondent, Cruz and Caesar then ran off toward Columbus Avenue with the blue van in pursuit.

At the conclusion of the fact-finding hearing, the court rejected respondent's claim that he was justified in using deadly physical force since "being involved in a fight where someone is smacked but not even knocked off their feet does not implicate the use of deadly physical force." Accordingly, the court found that the respondent committed an act, which, if committed by an adult, would constitute the crime of assault in the second degree, adjudicated respondent a juvenile delinquent, and placed him with the Division for Youth until October 31, 1995. Respondent appeals and we now reverse.

Penal Law § 35.15 provides, in relevant part, that an individual may not use deadly physical force unless he or she reasonably believes that another person is using or is about to use deadly physical force. Even in such case, however, deadly physical force may not be used if the individual, with complete safety as to himself and others, can avoid the necessity of doing so by retreating.

In order to determine whether a person's actions are reasonable within the meaning of the statute, a determination of reasonableness must be made that is both subjective and objective and "[t]he critical focus must be placed on the particular defendant and the circumstances actually confronting him at the time of the incident, and what a reasonable person in those circumstances and having defendant's background and experiences would conclude" (People v Wesley, 76 NY2d 555, 559; People v Goetz, 68 NY2d 96, 113-115; People v Davis, 201 AD2d 827, lv denied 83 NY2d 910).

The Court of Appeals thereafter set forth a two-step inquiry which must be undertaken to determine whether a defendant's conduct was justified. First, it must be ascertained whether defendant actually believed deadly physical force was necessary and, if the presentment agency fails to prove that the defendant did not actually believe the use of deadly physical force was necessary, then the fact-finder must proceed to the second step of the inquiry and assess the reasonableness of respondent's belief (People v Wesley, supra, at 559; People v Goetz, supra, at 115). Further, where evidence sup-

porting the defense of justification has been presented, as herein, the People must disprove that defense beyond a reasonable doubt *(People v McManus,* 67 NY2d 541, 543).

In the case before us, viewing the evidence in the light most favorable to the presentment agency *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932; *Matter of Mikal M.,* 191 AD2d 381), and bearing in mind that the credibility determinations of the fact-finder should not be disturbed on appeal unless clearly unsupported by the record *(People v Dellemand,* 205 AD2d 551, *lv denied* 83 NY2d 1003; *People v Garafolo,* 44 AD2d 86, 88), we conclude that the record fails to sustain the Family Court's conclusions.

Initially we note that the testimony of Cruz and Swinton was neither conflicting nor irreconcilable. Swinton specifically stated that he only saw the end of the incident and was unaware how it started or who threw the first blow. He did, however, emphasize the fact that respondent was younger and much smaller than Maldonado, as well as the degree of force that was used by Maldonado when striking respondent's face, having heard the impact thirty-feet away.

Cruz' testimony merely enhanced the testimony of Swinton and brought out the fact that respondent was being battered by a larger and older adult while his companions prevented intervention by others. The presentment agency offered no evidence to contradict the testimony of Cruz. Clearly, the appellant was surrounded with no way to escape and may well have believed that deadly force was necessary to avoid what he may have perceived as the deadly physical force being used against him.

Rather than applying the two-step process set forth in *Wesley (supra),* however, the Family Court, using a purely objective standard, erroneously concluded that the presentment agency disproved, beyond a reasonable doubt, the justification defense. The court never focused on the respondent and the circumstances confronting him at the time of the incident, specifically: the physical and age disparities between the two individuals, the force by which respondent was struck on the head and body by Maldonado and his adult companions, the respondent's prior experiences, if any, with Maldonado, the fact that Maldonado had been drinking, and that respondent was outnumbered and surrounded by larger, older men with no means to extricate himself.

In sum, the presentment agency failed to disprove, beyond a reasonable doubt, that the respondent was justified in using deadly physical force.

The Family Court also erred in failing to draw a missing witness inference with respect to Maldonado. The party seeking a missing witness charge must sustain the initial burden of showing that the opposing party failed to call a witness who could be expected to have knowledge regarding a material issue and to provide testimony favorable to the opposing party. Once accomplished, the burden shifts to the opposing party to account for the witness' absence or to show that the charge would be inappropriate because: the witness is not knowledgeable about the issue; the issue is not material or relevant; the testimony would be cumulative; the witness is not under the party's control; or the witness would not be expected to testify in his or her favor *(People v Macana,* 84 NY2d 173, 177; *People v Kitching,* 78 NY2d 532, 537; *People v Gonzalez,* 68 NY2d 424, 428).

In the instant action, it is clear that as a participant in the incident, Maldonado was knowledgeable about a material issue and that his testimony would not have been cumulative. Further, no claim was made that Maldonado was unavailable to testify and, contrary to the presentment agency's claim, Maldonado was not equally accessible to respondent, especially after having been slashed by him.

The Family Court, however, denied the requested charge, holding that it was likely that Maldonado would invoke his Fifth Amendment privilege, rendering him unavailable to testify. This was error as no claim was made that Maldonado refused to testify and no evidence was presented regarding the current status of Maldonado's case *(i.e.,* were the charges dropped, did he plead guilty, was he acquitted). Since the court embarked on sheer speculation in concluding that Maldonado would assert his privilege against self-incrimination without any basis to do so, the missing witness request should not have been denied *(People v Macana, supra,* at 179-180).

Contrary to the presentment agency's alternative argument, any error with respect to the denial of the missing witness inference was not harmless since the evidence of respondent's guilt was far from overwhelming *(see, People v Fields,* 76 NY2d 761; *People v Robertson,* 205 AD2d 243). Concur—Murphy, P. J., Ellerin, Kupferman, Williams and Tom, JJ.