■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD D. JONES, Appellant. [873 NYS2d 773]—

Kavanagh, J. Appeal from a judgment of the County Court of Fulton County (Giardino, J.), rendered March 17, 2008, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, assault in the second degree and criminal possession of a weapon in the fourth degree.

On the evening of March 1, 2007, defendant and David Lamphear were involved in a physical altercation during which defendant stabbed Lamphear in the abdomen with a pocket knife. Two weeks later, Lamphear died of complications that stemmed from the injury he sustained in the stabbing. Defendant was ultimately charged in a four-count indictment with manslaughter in the first and second degrees, assault in the

first degree and criminal possession of a weapon in the fourth degree. After trial, defendant was convicted of manslaughter in the second degree, assault in the first degree and criminal possession of a weapon in the fourth degree. County Court reduced the assault conviction to assault in the second degree* and sentenced defendant to concurrent prison terms of 7½ to 15 years on the manslaughter conviction and seven years on the assault conviction, with five years postrelease supervision, and time served on the criminal possession of weapon conviction. Defendant now appeals.

Defendant claims that his use of deadly physical force was justified because he was acting in self-defense when he stabbed Lamphear once in the abdomen with a pocket knife and the jury's rejection of this defense was against the weight of the evidence. We agree and because, on the evidence presented, the People have failed to meet their burden and prove beyond a reasonable doubt that defendant did not act in self-defense, we reverse defendant's convictions for manslaughter and assault and dismiss those counts of the indictment.

Lamphear and defendant had what all acknowledged to be an acrimonious relationship laced with racial overtones. Much of this animosity stemmed from the fact that defendant lived with Holly Walker, a woman with whom Lamphear had a prior relationship and the mother of one of Lamphear's children. According to Walker, Lamphear repeatedly expressed his dislike for defendant and had grown increasingly resentful of the fact that Walker lived with defendant and that her children had developed a positive relationship with him.

On the night in question, defendant agreed to drive Walker and her children to Lamphear's residence so that the children could be with him pursuant to a visitation schedule. According to Walker, while they were en route, Lamphear called her on a cell phone to complain that they were late and uttered threats directed at defendant if the children were not delivered as scheduled. Walker testified that Lamphear stated during the call that he had friends who were "waiting" and would "jump" defendant upon his arrival. When defendant and Walker did arrive, Lamphear approached them with a pipe in hand and demanded that defendant get out of the vehicle. According to

---

* County Court reduced defendant's conviction for assault in the first degree because it concluded that by rejecting the manslaughter in the first degree charge the jury did not find that defendant acted with intent to cause serious physical injury to Lamphear. By reducing the charge to assault in the second degree, it reconciled the jury's verdict as to the mental state required for the commission of both offenses.

Walker's testimony, Lamphear put the pipe down and, after defendant exited the vehicle, Lamphear suddenly and without provocation, "punched [defendant] in the face." Walker intervened and in the struggle that followed, Lamphear fell to the ground. At that point, according to Walker, Lamphear uttered a racial epithet, struck Walker in the face with his fist and picked up a wooden board that he used to hit defendant in the back of the head. Walker then fled to the house and defendant backed away from Lamphear towards his vehicle. Lamphear followed and, according to defendant, continued to brandish the board stating, "I'm going to kill you, n****r." Again, Lamphear attacked defendant with the board and this time struck a blow that fractured defendant's arm. As defendant reached the driver's side of the vehicle, Lamphear continued to advance toward him, brandishing the board, stating, "I'm going to get you now, n****r." As Lamphear tried to hit defendant with the board for a third time, defendant took out a pocket knife, swung it at Lamphear and struck him once, causing a two centimeter wound in the abdomen. Defendant then got into his vehicle and waited for Walker to join him. As Walker got into the vehicle, Lamphear took the board and smashed it through the driver's side window. Defendant then drove from the scene and, using 911, reported the incident to the police.

A weight of the evidence review requires us to independently review the evidence and, if a different verdict would not have been unreasonable, to " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Richardson*, 55 AD3d 934, 938 [2008]). Upon doing so here, we conclude that viewing the evidence as an integrated whole, the People have failed to establish beyond a reasonable doubt that defendant was not justified in his use of deadly physical force against Lamphear (*see People v McManus*, 67 NY2d 541, 546-547 [1986]; *Matter of Ismael S.*, 213 AD2d 169, 172 [1995] [adjudication that child was a juvenile delinquent was reversed where the People "failed to disprove, beyond a reasonable doubt, that the respondent was justified in using deadly physical force"]; *People v Reeder*, 209 AD2d 551, 551-552 [1994], *lv denied* 85 NY2d 913 [1995]).

Without question, defendant used deadly physical force or "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" when he stabbed Lamphear with the pocket knife

(Penal Law § 10.00 [11]). However, deadly physical force is justified if, under the circumstances presented, the actor cannot retreat "with complete personal safety, to oneself and others" and "reasonably believes that such other person is using or about to use deadly physical force" against him or her (Penal Law § 35.15 [2] [a]; *People v Ryan*, 55 AD3d 960, 963 [2008]; *People v Zindle*, 48 AD3d 971, 973 [2008], *lv denied* 10 NY3d 846 [2008]; *People v Brooks*, 32 AD3d 616, 617 [2006], *lv denied* 8 NY3d 844 [2007]; *People v Steele*, 19 AD3d 175, 176 [2005], *lv denied* 5 NY3d 795 [2005]).

While much of defendant's testimony at trial was the subject of vigorous dispute, there were facts which go to the core of his claim of justification that were essentially uncontradicted and that established that, before defendant had taken out his knife, he was the victim of a felonious assault perpetrated by Lamphear. For example, no evidence was presented to counter defendant's and Walker's testimony that Lamphear was the initial aggressor in this attack. In addition, it is uncontroverted that before defendant ever took out the knife, Lamphear had not only repeatedly threatened him, but physically assaulted him and Walker with his fist, and then attacked defendant with a wooden board striking him so hard that he fractured defendant's arm. Moreover, there is no evidence to support the conclusion that defendant had it in his power to retreat before being attacked by Lamphear and prior to his being struck repeatedly with the board. There is also no question that defendant struck Lamphear only once with the knife and that this occurred as defendant was fending off Lamphear's attack and attempting to safely leave the scene (*see People v Richardson*, 55 AD3d at 935; *Matter of Ismael S.*, 213 AD2d at 169).

While we are well aware that the credibility determinations of the factfinder should not be disturbed on appeal unless clearly unsupported by the record (*see People v Zindle*, 48 AD3d at 973; *People v Dellemand*, 205 AD2d 551, 552 [1994], *lv denied* 83 NY2d 1003 [1994]), there can also be no doubt but that this Court, upon a review of the record as a whole, is obligated to set aside a verdict that is against the weight of the evidence (*see People v Richardson*, 55 AD3d at 935; *People v Oldacre*, 53 AD3d 675, 678-679 [2008]). On these facts, we conclude that the People have failed to prove, beyond a reasonable doubt, that defendant did not act in self-defense and, as a result, defendant's manslaughter and assault convictions must be set aside as not being supported by the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495).

Finally, while the mere possession of a pocket knife is not a

crime and is only transformed into criminal conduct upon a showing that the weapon was possessed "with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]), we note that defendant has failed to present any specific arguments on this appeal challenging his conviction for criminal possession of a weapon in the fourth degree. As a result, we cannot conclude that his conviction for that crime was against the weight of the evidence.

Cardona, P.J., Peters and Stein, JJ., concur. Ordered that the judgment is modified, on the facts, by reversing so much thereof as convicted defendant of the crimes of manslaughter in the second degree and assault in the second degree under counts two and three of the indictment; said counts dismissed and sentences imposed thereon vacated; and, as so modified, affirmed.