■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG THOMPSON, Also Known as FELLA, Also Known as MONEY, Appellant. [904 NYS2d 797]—

Stein, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered December 18, 2008, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree, reckless endangerment in the first degree, tampering with physical evidence (two counts) and criminal possession of a weapon in the fourth degree.

Defendant was indicted for various crimes relating to the shooting death of Hassan Rainey. Defendant and his friends, Kassun Brown and Keith Dunbar, as well as Rainey, were all involved with selling drugs and had a dispute over money and drug sales during late August and early September 2007. On September 12, 2007, Dunbar was shot in the shoulder during an incident in which Rainey was involved. The next day, after Dunbar was discharged from the hospital, defendant was driving around in his minivan with Brown and Dunbar* and came upon Rainey in his car at a red light. At defendant's urging, Brown pulled up alongside Rainey's vehicle in such a way that the passenger-side door of the minivan was lined up with Rainey's driver-side door. Defendant and Brown then shot at Rainey's vehicle and fled. It was subsequently determined that a .40 caliber bullet caused Rainey's death.

Following a jury trial, defendant was convicted of murder in the second degree, criminal possession of a weapon in the second degree, reckless endangerment in the first degree, tampering with physical evidence (two counts) and criminal possession of a weapon in the fourth degree. Defendant was thereafter sen-

---

* Brown was driving the minivan, defendant was in the front passenger seat and Dunbar was in the far rear bench seat.

tenced to an aggregate prison term of 27²/₃ years to life. Defendant appeals.

Defendant challenges the legal sufficiency and/or weight of the evidence presented in support of his convictions. A conviction is based on legally sufficient evidence when, viewing the evidence in the light most favorable to the People, " 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (*People v Acosta*, 80 NY2d 665, 672 [1993], quoting *People v Steinberg*, 79 NY2d 673, 682 [1992]; *see People v Haskell*, 68 AD3d 1358, 1359 [2009]). In reviewing whether convictions are supported by the weight of the evidence, we consider the evidence in a neutral light, accord deference to the jury's credibility determinations and, where a contrary verdict would not have been unreasonable, " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Johnson*, 70 AD3d 1188, 1189-1190 [2010]).

With regard to his conviction of reckless endangerment in the first degree, we agree with defendant's contention that the evidence was legally insufficient to demonstrate a grave risk of death to Sharon Alexander (*see* Penal Law § 120.25), the only potential victim who County Court referenced in its charge to the jury. Alexander testified that she was walking down the street when defendant's minivan pulled up alongside Rainey's vehicle and stopped, whereupon several shots were fired from the passenger side window. No evidence was presented that defendant was aiming in Alexander's direction or that she was in or near the line of fire (*see People v Bennett*, 193 AD2d 808, 809 [1993]; *see also People v Sallitto*, 125 AD2d 345, 346 [1986], *lv denied* 69 NY2d 833 [1987]; *compare People v Watson*, 299 AD2d 735, 737 [2002], *lv denied* 99 NY2d 627 [2003]; *People v Teets*, 293 AD2d 766, 767 [2002], *lv denied* 100 NY2d 543 [2003]). To the contrary, Alexander testified that she was about three houses from the corner where the shots were fired, that she was on the minivan's driver side and that the shots were fired in the opposite direction of where she was located. Under the circumstances, the evidence did not support a finding that defendant's conduct posed a grave risk of death to Alexander (*see People v Davis*, 72 NY2d 32, 36-37 [1988]). Accordingly, defendant's conviction of reckless endangerment in the first degree must be reversed.

We also agree with defendant's assertion that his conviction

of criminal possession of a weapon in the fourth degree is not supported by legally sufficient evidence. For defendant to be found guilty of this crime, the People were required to prove, among other things, that he knowingly possessed a loaded firearm between August 20 and 27, 2007 (*see* Penal Law § 265.01 [1]). While Adrian Scott testified that he saw a .40 caliber gun at Dunbar's apartment and there was other testimony that such gun belonged to defendant, there was no evidence that defendant was present at Dunbar's apartment or otherwise in possession of the gun during the relevant time. Thus, defendant's conviction of criminal possession of a weapon in the fourth degree must also be reversed.

We disagree, however, with defendant's contention that his convictions of murder in the second degree and criminal possession of a weapon in the second degree were against the weight of the evidence because they were predicated on the testimony of incredible witnesses. Both Brown and Dunbar testified that, on September 13, 2007, defendant possessed the loaded .40 caliber gun that killed Rainey and that defendant fired the fatal shot. Dunbar also testified that, after they left the scene, defendant stated, "I think I hit him" and two other witnesses testified that defendant admitted to them that he killed Rainey. Rainey's cousin, who was riding in the passenger seat of Rainey's vehicle during the attack, testified that the shots came from the passenger side of the minivan and that the shooter's build was consistent with defendant's.

The foregoing testimony was sufficient to establish the elements of murder in the second degree and criminal possession of a weapon in the second degree (*see* Penal Law § 125.25 [1]; § 265.03 [1] [b]). While there were some minor inconsistencies between the witnesses' accounts of the events, there was no inconsistency between the accounts provided by Brown and Dunbar, the witnesses who were present at the time of the shooting. The fact that some of the witnesses' testimony was given in connection with cooperation agreements with the People, and that such witnesses received some benefit as a result thereof, does not render their testimony incredible as a matter of law (*see People v Rodriguez*, 68 AD3d 1351, 1353 [2009], *lv denied* 14 NY3d 804 [2010]; *People v Vargas*, 60 AD3d 1236, 1238 [2009], *lv denied* 13 NY3d 750 [2009]), especially when considered cumulatively (*see People v Rodriguez*, 68 AD3d at 1353; *People v Littebrant*, 55 AD3d 1151, 1155 [2008], *lv denied* 12 NY3d 818 [2009]). According deference to the jury's credibility determinations, particularly in light of their opportunity to view the witnesses and assess their demeanor (*see People v*

*Haskell*, 68 AD3d at 1360; *People v Rodriguez*, 68 AD3d at 1352-1353), we do not find that these verdicts were against the weight of the evidence.

We turn next to defendant's challenges to the proof relating to his convictions of tampering with physical evidence. As relevant here, one is guilty of tampering with physical evidence where, "[b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he [or she] suppresses it by any act of concealment, alteration or destruction" (Penal Law § 215.40 [2]). With regard to the charge that defendant concealed the minivan used in the shooting, defendant stipulated that the vehicle was involved in the shooting and that it was thereafter driven to the City of Utica, Oneida County with his knowledge. Janae Wilson testified that defendant drove the minivan to her residence in Utica and placed it in the back of the house. The evidence further established that the minivan was subsequently sold to a third party in New York City.

As to the charge that defendant tampered with the .40 caliber gun that was involved in the shooting, defendant contends that the only evidence of his guilt was Scott's testimony that defendant admitted that he "got rid of it, broke it down." Defendant argues that, inasmuch as his admission was uncorroborated, such evidence was legally insufficient to support his conviction. While it is true that a conviction cannot be predicated solely upon evidence of a defendant's confession or admission without additional proof that the offense charged has been committed (*see* CPL 60.50), the rule requiring corroboration "is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone" (*People v Daniels*, 37 NY2d 624, 629 [1975]; *see People v Button*, 56 AD3d 1043, 1045 [2008], *lv dismissed* 12 NY3d 781 [2009]). Defendant's admission here was corroborated by the testimony of a number of witnesses that defendant possessed and used the .40 caliber gun during the shooting, and by the recovery of .40 caliber bullets and casings in connection therewith. In addition, Scott testified that he saw the .40 caliber gun on the day of the murder, while Dunbar testified that he never saw the gun again and it was never found during the investigation or produced by anyone involved in the crimes. This evidence, viewed in the light most favorable to the People, is sufficient to support the jury's finding that defendant intended to, and did, conceal the vehicle and the gun. Furthermore, while a different verdict would, arguably, not have been unreasonable, we conclude that the convictions of tampering

with physical evidence were supported by the weight of the evidence.

We find no merit to defendant's contention that County Court erred in providing a jury instruction on accessorial liability. Initially, we note that it is unnecessary that the indictment specify that the People were pursuing such a theory (*see People v Rivera*, 84 NY2d 766, 769 [1995]; *see People v Duncan*, 46 NY2d 74, 79-80 [1978], *cert denied* 442 US 910 [1979]; *People v Robinson*, 53 AD3d 681, 683-684 [2008], *lv denied* 11 NY3d 794 [2008]). Moreover, the People expressly reserved their right to present evidence suggesting that defendant was liable as an accessory, both in their bill of particulars and in open court. It was undisputed that the shots were fired from a minivan occupied by defendant, Brown and Dunbar, and there was testimony that defendant encouraged the driver to pull up to Rainey's vehicle and that he shot at Rainey. Even if the jury had concluded that defendant did not actually fire the fatal shot, there was ample evidence to support the conclusion that he "solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed]" the others with the intent to cause Rainey's death (Penal Law § 20.00). Thus, the jury instruction on accessorial liability was warranted (*see People v Long*, 294 AD2d 614, 616 [2002], *lv denied* 98 NY2d 652 [2002]; *see also People v Hernandez*, 298 AD2d 308 [2002]).

We also discern no error in County Court's refusal to instruct the jury that Dunbar was an accomplice as a matter of law for purposes of corroboration under CPL 60.22. Evidence was presented at trial that Dunbar did not own or drive the vehicle used in the shooting or possess or fire a weapon, and Dunbar testified that he did not want to retaliate for having been shot the previous day. In view of this evidence, the jury could have inferred that only defendant and Brown were complicit in the crimes. Thus, Dunbar's status as an accomplice was a question of fact for the jury to resolve (*see People v Dickenson*, 293 AD2d 867, 868 [2002]).

Contrary to defendant's argument, we find that he was not deprived of the effective assistance of counsel. Indeed, our review of the record reveals that counsel pursued the only plausible trial strategy—attacking the credibility of the parade of witnesses against defendant—made appropriate objections throughout the trial and even argued successfully for the dismissal or reduction of charges. Considering the totality of the circumstances and notwithstanding any arguable errors, all of which we find to be harmless (*see People v Varmette*, 70 AD3d 1167, 1172 [2010], *lv denied* 14 NY3d 845 [2010]), we are satis-

fied that defendant received meaningful representation (*see People v Major*, 68 AD3d 1244, 1245-1246 [2009], *lv denied* 14 NY3d 772 [2010]; *People v Jackson*, 48 AD3d 891, 893 [2008], *lv denied* 10 NY3d 841 [2008]).

Defendant's remaining contentions have been considered and are unavailing.

Spain, J.P., Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as convicted defendant of reckless endangerment in the first degree under count four of the indictment (count three submitted to the jury) and criminal possession of a weapon in the fourth degree (count six submitted to the jury); said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.