■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAH-LAH VANDERHORST, Appellant. [984 NYS2d 688]—

---

Garry, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered August 8, 2012 in Albany County, upon a verdict convicting defendant of the crime of manslaughter in the first degree.

In April 2011, defendant killed the victim by stabbing him in the chest during a knife fight at Hoffman Park in the City of Albany. Numerous witnesses watched the altercation, most of whom, like defendant and the victim, were teenagers; one individual video-recorded the fight on a cell phone. Defendant and codefendant Dhoruba Shuaib, who was accused of aiding defendant during the fight, were jointly indicted on one count of murder in the second degree; their trials were later severed.* Defendant stipulated at his trial that he had caused the victim's death, but maintained that his actions were justified because he believed that the victim—with whom he had been feuding for many months—was going to kill him. The jury acquitted defendant of murder in the second degree, but convicted him of the lesser included offense of manslaughter in the first degree. Defendant was sentenced to a prison term of 25 years, followed by five years of postrelease supervision. He appeals.

Initially, defendant challenges the legal sufficiency of the evidence, asserting that the People failed to establish that he had the requisite intent, and failed to disprove his justification defense. This challenge was not preserved for appellate review by a sufficiently specific trial motion for dismissal (see People v Gray, 86 NY2d 10, 19 [1995]). However, defendant also contends that the jury verdict was against the weight of the evidence and, in reviewing this claim, we necessarily determine whether the elements of the crime were proven beyond a reasonable doubt and whether the justification defense was disproven (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Hughes, 111 AD3d 1170, 1171 [2013]).

The verdict was not against the weight of the evidence. There was testimony from a number of the individuals who watched the fight, and the video-recording, which depicts the encounter

---

* Shuaib was convicted by a jury of manslaughter in the first degree, and the verdict was upheld on appeal (People v Shuaib, 111 AD3d 1055 [2013]).

beginning shortly after the fight commenced, was played for the jury. The recording reveals that defendant and the victim were both armed with knives throughout most of the altercation, but that the victim consistently backed away and never struck at defendant, while defendant advanced toward the victim, lunged at him, stepped around the victim to prevent him from retreating, and, at one point, threw a bicycle at him. The victim can be heard early in the encounter asking defendant to put the knife down and "give me a fair one," and onlookers are heard repeatedly calling defendant's name and urging him to stop, fight with his hands, and put down the knife. At several points in the altercation, bystanders attempted unsuccessfully to pull defendant away from the victim or step between them. Ultimately, the victim backed into a fence as defendant and Shuaib approached; defendant then lunged toward the victim, stabbed him and ran away. The victim briefly pursued defendant before collapsing.

Defendant and several of his relatives testified about a longstanding history of animosity that they said was instigated by the victim, who had allegedly taunted defendant, chased him, and otherwise harassed him on multiple occasions. Defense witnesses described various efforts to defuse these hostilities, including complaints to police, rides that defendant arranged to avoid meeting the victim, and a confrontation between the mothers of defendant and the victim, in which they agreed to try to keep their sons apart. Witnesses testified about previous altercations between the two, including an incident in which defendant threw a brick, another in which, as stipulated between defendant and the People, the victim told his mother that defendant had chased him with a knife, and an alleged threat by defendant to stab the victim on the night before he did so. Defendant testified that the victim initiated the encounter in the park by approaching defendant, armed and accompanied by several friends; defendant said that he did not try to run away because he did not believe he could outrun the victim—who was a high school track star—that he threw the bicycle to try to disarm the victim, and that he did not swing at the victim until his efforts to "get [his] distance from [him]" failed. On cross-examination, however, he acknowledged, among other things, that he had heard the victim urge him to put down the knife, and that he could have run away.

As defendant notes, there were inconsistencies in the eyewitness accounts of the details of the encounter in the park, in particular as to what transpired before the video began and whether the fight was instigated by defendant or the victim. However, these discrepancies, considered with the video, created cred-

ibility issues to be resolved by the jury. According deference to the jury's assessments and upon our own review of the evidence—including that pertaining to defendant's intent and his justification defense—we find no reason to disturb the verdict (*see People v Brooks,* 32 AD3d 616, 616-617 [2006], *lv denied* 8 NY3d 844 [2007]; *People v Di Bella,* 277 AD2d 699, 700-701 [2000], *lv denied* 96 NY2d 758 [2001]; *compare People v Jones,* 59 AD3d 864, 866-867 [2009]).

Supreme Court did not abuse its discretion in admitting audio recordings of two calls made to 911 by observers during the altercation, in which the callers described the participants, begged for police assistance and—in one of the calls—repeatedly shouted at defendant, by name, to stop. The cries and screams of onlookers can be heard in the background of the recordings; both callers testified, acknowledging that they placed the calls. It is evident that the recordings were made as the altercation was unfolding and while the callers were exposed to the stress of the ongoing emergency. Further, the callers' statements were corroborated by the video and the trial testimony. Thus, the recordings were admissible pursuant to the present sense impression exception to the hearsay rule (*see People v Buie,* 86 NY2d 501, 511 [1995]; *People v Foster,* 52 AD3d 957, 961 [2008], *lv denied* 11 NY3d 788 [2008]), as well as the excited utterance exception (*see People v Barnes,* 64 AD3d 890, 892 [2009], *lv denied* 13 NY3d 858 [2009]; *People v Rodriguez,* 306 AD2d 686, 688 [2003], *lv denied* 100 NY2d 624 [2003]). Moreover, defendant's right to a fair trial was not prejudiced by a caller's statement on one of the recordings that "[the victim] is self-defense." At defendant's request, Supreme Court gave the jury a limiting instruction to the effect that the caller would explain during her testimony what she meant by this statement, that the court's charge would instruct the jury as to the legal definition of self-defense and that they could not determine what constitutes self-defense from the caller's words. The jury is presumed to have followed this instruction, which we find sufficient to cure any resulting prejudice (*see People v Morris,* 21 NY3d 588, 598 [2013]; *People v Alvarez,* 38 AD3d 930, 932 [2007], *lv denied* 8 NY3d 981 [2007]).

Supreme Court did not deprive defendant of his right to due process and to present a defense by precluding the testimony of his expert, Kenneth Cooper, a certified security trainer with experience instructing law enforcement officers in the use of force and weapons, including knives. In an offer of proof, Cooper testified as to his opinions of the intentions and strategies employed by defendant and the victim, as allegedly revealed by

their body positions and movements during the video. Cooper opined that defendant's body language showed that he was "blustering" and that he intended to run away; he further described the "Tueller drill," a principle allegedly describing the distance that must be maintained during a knife fight because of the distance an armed person can travel before the other combatant can react. However, Cooper acknowledged that these opinions were based on principles derived from law enforcement training, and that he had no knowledge as to whether defendant or the victim had such training. In the absence of such evidence, the proposed testimony was "within the average juror's understanding, not beyond the range of ordinary knowledge or intelligence and [did] not require professional or scientific knowledge" (*People v Johnston*, 273 AD2d 514, 517 [2000], *lv denied* 95 NY2d 935 [2000]; *see People v Murphy*, 79 AD3d 1451, 1452-1453 [2010], *lv denied* 16 NY3d 862 [2011]; *see generally People v Diaz*, 20 NY3d 569, 575 [2013]). Thus, it was properly precluded.

Defendant next contends that he did not receive meaningful representation in that his trial counsel failed to preserve his challenge to the legal sufficiency of the evidence. However, such a failure does not constitute ineffective assistance where, as here, a trial motion for dismissal would likely have been denied in view of the evidence and trial testimony (*see People v Jones*, 101 AD3d 1241, 1242-1243 [2012], *lv denied* 21 NY3d 944 [2013]; *People v McRobbie*, 97 AD3d 970, 972 [2012], *lv denied* 20 NY3d 934 [2012]). As to the claim that defense counsel should not have stipulated to the fact that defendant caused the victim's death by inflicting the stab wound, this decision appears to have been strategically intended to transfer the jury's focus from the fact that defendant caused the wound—which was apparent from the video—to his justification defense and acrimonious history with the victim (*see People v Nguyen*, 90 AD3d 1330, 1334 [2011], *lv denied* 18 NY3d 960 [2012]; *People v Knox*, 80 AD3d 887, 889 [2011], *lv denied* 16 NY3d 860 [2011]; *People v Fancher*, 267 AD2d 770, 771 [1999], *lv denied* 94 NY2d 919 [2000]). Viewed in its totality, the record establishes that counsel made appropriate pretrial motions, presented a cogent theory of defense, effectively cross-examined witnesses, and obtained an acquittal on the charge of murder in the second degree, thus providing defendant with meaningful representation (*see People v Lawing*, 110 AD3d 1354, 1356 [2013]; *People v Rogers*, 94 AD3d 1246, 1251 [2012], *lv denied* 19 NY3d 977 [2012]).

Finally, we find no abuse of discretion or extraordinary cir-

cumstances warranting reduction of defendant's sentence in the interest of justice. Despite defendant's youth, considering the documentation in the presentence investigation report, including defendant's school records, together with his lack of remorse and the devastating impact of his conduct on the victim and his family, imposition of the maximum sentence was neither harsh or excessive (*see People v Shuaib*, 111 AD3d 1055, 1058 [2013]) nor so grossly disproportionate to the severity of his crime as to constitute cruel and unusual punishment (*see* US Const 8th Amend; NY Const, art I, § 5; *People v Thomas*, 2 AD3d 982, 984 [2003], *lv denied* 1 NY3d 602 [2004]).

Peters, P.J., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is affirmed.