*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 23, 2014                104504
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                   MEMORANDUM AND ORDER

SAHTISE S. GREEN,
                    Appellant.
_____

Calendar Date:  September 8, 2014

Before:  McCarthy, J.P., Rose, Egan Jr., Devine and Clark, JJ.

_____

James P. Milstein, Public Defender, Albany (Theresa M. Suozzi of counsel), for appellant.

P. David Soares, District Attorney, Albany (Steven M. Sharp of counsel), for respondent.

_____

Devine, J.

Appeal from a judgment of the Supreme Court (Lamont, J.), rendered June 17, 2011 in Albany County, upon a verdict convicting defendant of the crime of murder in the second degree.

A group of people had assembled outside a convenience store in the City of Albany when defendant stabbed the victim in the neck with a knife, striking the victim's jugular vein and ultimately causing his death.  Following a jury trial, defendant was found guilty of murder in the second degree and sentenced to 25 years to life in prison.  Defendant appeals.

The conviction was supported by legally sufficient evidence and was not against the weight of the evidence.  In conducting

our legal sufficiency analysis, we determine whether, viewing the evidence in a light most favorable to the People, the People established its burden of proving each element of the charged crime beyond a reasonable doubt (see People v Acosta, 80 NY2d 665, 672 [1993]; People v Hatchcock, 96 AD3d 1082, 1083 [2012], lv denied 19 NY3d 997 [2012]; People v Thompson, 75 AD3d 760, 762 [2010], lvs denied 15 NY3d 893, 894, 895 [2010]; People v Rouse, 4 AD3d 553, 555 [2004], lv denied 2 NY3d 805 [2004]). Further, in considering defendant's weight of the evidence claim, the trial evidence is viewed in a neutral light and, if a different outcome would not have been unreasonable, we must "'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (People v Bleakley, 69 NY2d 490, 495 [1987], quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]; accord People v Tinkler, 105 AD3d 1140, 1141 [2013], lv denied 21 NY3d 1020 [2013]; People v Thompson, 75 AD3d at 762) and accord "great deference to the jury's credibility determinations" (People v Mariano, 101 AD3d 1367, 1368 [2012]; see People v Shuaib, 111 AD3d 1055, 1056 [2013]; People v Blackman, 90 AD3d 1304, 1308 [2011], lv denied 19 NY3d 971 [2012]).

Defendant's cousin testified, on behalf of the People, that she spoke with defendant after he had departed a bar shortly before the stabbing and that he showed her a knife. She further stated that defendant was looking for the victim with the intent to kill him. Another witness averred that, as he approached the convenience store, he greeted defendant and, thereafter, saw defendant walk up to the victim and stab him in the neck. As defendant retreated from the scene, the witness then overheard him say, "I don't give a fuck" and, further, that he would "do it again if I got to." While other prosecution witnesses did not personally observe defendant stab the victim, they testified that defendant was observed standing close to the victim and holding a bloody knife. One witness testified that the victim took a knife out of his pants pocket after he was stabbed and pursued defendant for a brief time, at which time gun shots were fired and defendant was struck in the right hip. Defendant took the stand and admitted to having stabbed the victim, but he insisted that he lunged at the victim with a knife after he observed the victim place his hand under his shirt to touch a silver item,

which defendant feared — but could not confirm — was a weapon. Defendant, in support of his affirmative defense that the stabbing was justified due to his belief that the victim was about to apply deadly physical force against him and that retreating therefrom was not possible (see Penal Law § 35.15 [2] [a]), explained that the victim, who he believed was a violent gang member, had confronted him prior to the stabbing incident and slashed him on the arm with a knife. However, there was evidence that defendant misrepresented the nature of his injury after it occurred and made no mention of the victim's previous threats to the police officers that were investigating the incident. It was only after learning that the victim had died that defendant exclaimed to police, "I only had a bullshit knife. He had a gun. He flashed it. I'm scared." At trial, however, defendant admitted that the victim did not flash a gun at him during the confrontation. Although the jury was presented with certain contradictory witness testimony regarding the stabbing and the circumstances leading to such incident, the jury, as was within its right, chose to reject defendant's justification defense, a determination which shall remain undisturbed (see People v Vanderhorst, 117 AD3d 1197, 1199-1200 [2014]; People v Dale, 115 AD3d 1002, 1006 [2014]; People v Fisher, 89 AD3d 1135, 1137-1138 [2011], lv denied 18 NY3d 883 [2012]).

Next, defendant insists that, because he was still in pain from being shot, was deprived of Miranda warnings and was subject to deceptive interrogation tactics by interviewing officers, the statements that he made during the custodial police interrogation that occurred after the stabbing incident should have been suppressed as involuntary. We reject, at the outset, defendant's claim that his waiver of a pretrial suppression hearing was involuntary due to counsel's failure to fully advise him of the significance of such decision. After defendant's counsel notified Supreme Court that defendant was waiving his right to Wade, Mapp and Huntley hearings, the court inquired whether defendant had been advised that he was entitled to such proceedings and, further, asked defendant whether he was "willing to freely and voluntarily waive those hearings," to which defendant responded affirmatively. No objection to the admission of defendant's statements was made at any time during or after the trial, and we reject defendant's claim that the admission of

such evidence deprived him of a fair trial. Although defendant testified that he was "dragged" from the hospital by police officers in order to be questioned and was still in pain and bleeding from his gun shot wound, a police officer involved in the interview testified that defendant was brought into the police station to provide information about the shooting upon his release from the hospital and that, once defendant arrived at the station, he was left to sleep for approximately three hours before being questioned. Other evidence reveals that defendant was given a Miranda warning well before he admitted to having stabbed the victim, and he was permitted to exit the interview room at any time, but consented to stay and continue the interview. Despite defendant's assertion that his request for an attorney was ignored by the interviewing officers, there is proof that defendant was notified that he could request an attorney, which evidence was not challenged at trial. Overall, nothing in the record supports defendant's argument that his statements were the result of deceptive or coercive police questioning, thereby rendering them inadmissible (see People v Mercado, 113 AD3d 930, 931-932 [2014], lv denied 23 NY3d 1040 [2014]; People v Heesh, 94 AD3d 1159, 1160-1161 [2012], lv denied 19 NY3d 961 [2012]; People v Pouliot, 64 AD3d 1043, 1045-1046 [2009], lv denied 13 NY3d 838 [2009]).

Defendant also claims that certain cumulative errors committed during the trial resulted in the denial of the effective assistance of counsel. In particular, defendant maintains that counsel failed to make proper objections or raise meritorious defenses during trial, although he fails to specify the exact nature of such shortcomings. Defendant's attorney, however, made numerous objections and thoroughly cross-examined the People's witnesses in an attempt to demonstrate that they were incredible or biased and, further, that defendant acted in self-defense. Moreover, to the extent that defendant points to the allegedly uninformed waiver of his right to pretrial suppression hearings as a basis to find that he was denied the right to the effective assistance of counsel, such decision appears to have been strategic in nature and "and we will not second-guess counsel's reasoned professional determinations" (People v Smith, 89 AD3d 1148, 1149 [2011], lv denied 19 NY3d 968 [2012]; see People v Kenyon, 108 AD3d 933, 939-940 [2013], lv

denied 21 NY3d 1075 [2013]; People v Rodabaugh, 26 AD3d 598, 600 [2006]).

Finally, in the absence of extraordinary circumstances or an abuse of the sentencing court's discretion, we decline the request to reduce defendant's statutorily permissible sentence in the interest of justice (see People v Vanderhorst, 117 AD3d at 1201-1202; People v Fulwood, 86 AD3d 809, 811-812 [2011], lv denied 17 NY3d 952 [2011]; People v Brown, 46 AD3d 949, 952 [2007], lv denied 10 NY3d 808 [2008]).  Nor do we agree that the imposition of the maximum prison term was an act of retribution for declining the People's plea offer and proceeding to trial (see People v Terry, 85 AD3d 1485, 1489 [2011], lv denied 17 NY3d 862 [2011]; People v Tannis, 36 AD3d 635, 635 [2007], lv denied 8 NY3d 927 [2007]; People v Chappelle, 14 AD3d 728, 729 [2005], lv denied 5 NY3d 786 [2005]).

McCarthy, J.P., Rose, Egan Jr. and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court