OPINION OF THE COURT
Raja Rajeswari, J.
The defendant, Hingino Venturo, is charged with aggravated harassment in the second degree (Penal Law § 240.30 [1] [a]) and harassment in the second degree (Penal Law § 240.26 [1]). He moves for an order dismissing all counts as facially insufficient pursuant to Criminal Procedure Law §§ 170.30 (1) (a); 100.15 (3) and 100.40 (1) (a) and for other relief. The People oppose the motion to dismiss.
Facial Insufficiency
The defendant’s motion to dismiss for facial insufficiency is denied for the reasons articulated below.
Procedural History
The defendant was arraigned August 26, 2015 on a complaint signed that same day by Police Officer Antonio Esposito. The *218 case was adjourned until August 31, 2015 for the People to serve and file a supporting deposition of the complainant. On August 31, 2015, the People served and filed that supporting deposition and the court deemed the accusatory instrument an information. The court adjourned the case until October 15, 2015 for response and decision on the instant omnibus motions, which defendant served and filed off-calendar on September 18, 2015. On October 15, 2015, the People had not served and filed a response. The court adjourned the case until December 9, 2015 for response and decision. The People served and filed their response on October 23, 2015.
The relevant factual allegations of the accusatory instrument read as follows:
“I [P.O. Antonio Esposito] am informed by Jessica Rivera, of an address known to the District Attorney’s Office, that [on or about June 18, 2015 at about 10:17 a.m. inside 89 Avenue C, ‘ID’ in the County and State of New York] she received a telephone call from the defendant, in which the defendant stated to Ms. Rivera in substance, T am a changed man, if I got to shoot you, then myself [sic], I will. If I got to put you six feet under with your mother, I will.’
“I am further informed by Ms. Rivera that she knew the telephone call was from the defendant because she recognized the caller’s voice to be that of the defendant, and she recognized the number from which they came [sic].
“I am further informed by Ms. Rivera that the defendant’s above-mentioned conduct caused Ms. Rivera to feel annoyed, harassed, alarmed and threatened.”
Discussion
The defendant contends that the accusatory instrument is facially insufficient as to both counts because the defendant’s alleged statements in the telephone call that he allegedly made to the complainant do not amount to a “true threat” and constitute protected speech under the Federal and State Constitutions.
A misdemeanor information serves the same role in a misdemeanor prosecution that an indictment serves in a felony prosecution; it ensures that a legally sufficient case can be made against the defendant (People v Dumay, 23 NY3d 518 *219 [2014]; People v Alejandro, 70 NY2d 133, 139 [1987]). Accordingly, a misdemeanor information must set forth “nonhearsay allegations which, if true, establish every element of the offense charged and the defendant’s commission thereof” (People v Kalin, 12 NY3d 225, 228-229 [2009], citing People v Henderson, 92 NY2d 677, 679 [1999], and CPL 100.40 [1] [c]). This is known as “the prima facie case requirement” (People v Kalin, 12 NY3d at 229). The prima facie case requirement does not insist that the information allege facts that would prove defendant’s guilt beyond a reasonable doubt (People v Jennings, 69 NY2d 103, 115 [1986]). Rather, the information need only contain allegations of fact that “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense” (People v Casey, 95 NY2d 354, 360 [2000]).
A court reviewing for facial insufficiency must subject the allegations in the information to a “fair and not overly restrictive or technical reading” (id.), assume that those allegations are true, and consider all reasonable inferences that may be drawn from them (CPL 100.40, 100.15; People v Jackson, 18 NY3d 738, 747 [2012]; see also People v Casey, 95 NY2d at 360).
Penal Law § 240.30 (1) provides in relevant part that a person is guilty of aggravated harassment in the second degree when:
“With intent to harass another person, the actor . . . communicates, anonymously or otherwise, by telephone ... a threat to cause physical harm to . . . such person . . . and the actor knows or reasonably should know that such communication will cause such person to reasonably fear harm to such person’s physical safety . . . .”
Penal Law § 240.26 provides in relevant part that a person is guilty of harassment in the second degree:
“[W]hen, with intent to harass, annoy or alarm another person:
“1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . .”
A threat to cause physical harm is an essential element of aggravated harassment in the second degree in Penal Law § 240.30 (1) (a) (CJI2d[NY] Penal Law § 240.30 [1] [a]). A threat to subject a person to physical contact is a permissible theory of guilt of harassment in the second degree in Penal Law *220 § 240.26 (1) (CJI2d[NY] Penal Law § 240.26 [1]; see People v Orr, 47 Misc 3d 1213[A], 2015 NY Slip Op 50568[U] [Crim Ct, NY County 2015]).
The Free Speech Clause of the First Amendment to the US Constitution and made applicable to the states through the Fourteenth Amendment provides that “Congress shall make no law . . . abridging the freedom of speech” (Virginia v Black, 538 US 343, 358 [2003]; see People v Marquan M., 24 NY3d 1, 4-5 [2014]). The New York State Constitution affords the same protection (see NY Const, art I, § 8). Such freedom is not absolute. The Federal Constitution permits the states to prohibit “true threats” to engage in physical violence (Virginia v Black, 538 US at 359). The Black court defined “true threats” to “encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals” (id.). Whether or not the speaker intends to carry out the threat is immaterial to deny him constitutional protection (id.). This is because the “true threats” prohibition is intended to protect individuals from the “disruption” and “fear of violence” as much as from the violence itself (id. at 360).
Some courts have concluded that for a threat to be “true” it must threaten “immediate” violence (see People v Orr, 2015 NY Slip Op 50568 [U]; People v Brodeur, 40 Misc 3d 1070, 1073 [Crim Ct, Kings County 2013]). The defendant urges this court to follow suit. However, Virginia v Black did not put such gloss on a “true threat” nor did Watts v United States (394 US 705, 708 [1969]), which coined the term.[1] Because the “true threat” exception to free speech rights as annunciated by the Watts and Black courts does not include an immediacy requirement and no New York appellate court has held otherwise, this court respectfully declines to follow Orr and Brodeur in this regard (see People v Prisinzano, 170 Misc 2d 525, 536 [Crim Ct, NY County 1996] [“To constitute a true threat it need only be shown that it is possible to carry out a threat, whether in the present or the future”]).
*221 Immediacy, of course, is an essential factor for the so-called “fighting words” exception to free speech rights. In Chaplinsky v New Hampshire (315 US 568 [1942]), the Supreme Court upheld the constitutionality of a state statute that provided that no person shall utter any “offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name . . . with intent to deride, offend or annoy him” (id. at 569). The defendant allegedly said to the complainant on a public street, “You are a God damned racketeer” and “a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists” (id.). In reaching its holding, the Chaplin-sky court reasoned that
“[t]he statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker—including ‘classical fighting words’, words in current use less ‘classical’ but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats” (id. at 573).
In People v Dietze (75 NY2d 47, 52 [1989]), the Court Appeals recognized the vitality of the “fighting words” exception annunciated in Chaplinsky when those words “create an imminent danger of violence.”[2]
The defendant concedes that if his alleged words to the complainant had been “I am going to shoot you myself and I am going to put you six feet under with your mother,” that would be a true threat. He distinguishes this sort of statement from the one he allegedly actually made because each of the threats is preceded by the phrase, “if I got to.” He characterizes the alleged statement as qualified by those words, rendering the statement contained in the accusatory instrument ambiguous and unclear. The court disagrees. First of all, unless the complainant were to use deadly force against the defendant or another person, under no other circumstance would the defendant be permitted to shoot the complainant. The defend *222 ant’s alleged statement conditions shooting the complainant totally on his own finding of justification. The defendant’s statement does not place any conditions or prerequisites upon the behavior of the complainant and is completely dependent upon the defendant’s subjective judgment as to whether she should live.
These statements would leave a reasonable person receiving that message to be left in a quandary as to what might precipitate a murderous attack against her and when that attack would occur. It is reasonable to infer that the defendant’s prefacing his alleged threats to shoot the complainant by uttering “if I got to” would not likely convince her or any other listener that she had nothing to fear from him. At best, that phrase would tell the listener that she would not be shot if the defendant didn’t feel he had to. This would be small comfort to her. “If I got to” in this context does not dilute the reality of the threat to unjustifiably shoot anymore than how those words were uttered by the defendant in People v Green (121 AD3d 1294, 1295 [3d Dept 2014]). In that case, charging murder, there was testimony that the defendant had told the witness that he was seeking the victim, intending to kill him. Another witness testified that he saw the defendant walk up to the victim and stab him in the neck. As defendant Green fled from the scene, the witness heard him say that he would “do it again, if I got to” (id.). The Green court concluded that given the surrounding circumstances of the stabbing the jury was within its right to reject the defendant’s justification defense. The Appellate Division did not highlight the defendant’s statement after the stabbing over all the other circumstances testified to. Nevertheless, there were no other post-stabbing circumstances referred to that would have supported a view that, had the defendant decided to stab the victim again, the subsequent act would have been motivated by anything other than anger. The defendant’s reliance on People v Yablov (183 Misc 2d 880 [Crim Ct, NY County 2000]) is misplaced. In that case the defendant left this message on the complainant’s answering machine: “If I don’t get the money you make tomorrow, I’ ‘L, [sic] go to the next step. I have so many irons in the fire, you don’t know what the fuck is going on! You’ll be vulnerable. We’ll get you David, we’ll get you!” (Id. at 882.) The Yablov court held the statement and others allegedly telephoned to be “crude, sophomoric and disjointed” diatribes that were so vague that they did not contain clear threats of physical violence (id. at *223 888). Similarly, in People v Behlin (21 Misc 3d 338 [Crim Ct, Kings County 2008]), the defendant’s alleged statements to a school principal to “watch it” and that the defendant was going to “get” her were too vague (id. at 342). Equally unhelpful to the defendant is the decision, which he cites, People v Orr (2015 NY Slip Op 50568[U]). In that case the court found no true threats when the defendant telephoned complainant, with whom he had a child, and said that “I can have you handled,” and sent two text messages, “Go kill yourself bitch” and ‘You’re not worth the air to take the jump bitch” (id. at *1). In the instant matter, there is no question that the threat is to use deadly force against the complainant.
Also off point are three other cases cited by the defendant, People v Monroe (183 Misc 2d 374 [Crim Ct, NY County 2000]), People v Rusciano (171 Misc 2d 908 [Eastchester Just Ct 1997]), and People v Amalfi (141 Misc 2d 940 [Rochester City Ct 1988]). In all these cases, the accusatory instrument was dismissed not because the defendant’s words weren’t true threats but because the telephone calls were initiated by the complainant. People v Portnoy (158 Misc 2d 60, 63 [Crim Ct, Kings County 1993]), also cited, was dismissed because there were no statements at all during the alleged telephone calls attributed to the defendant.
Because the alleged statements provide reasonable cause to believe that the defendant threatened to shoot the complainant, these statements are not protected speech. Therefore, for pleading purposes these utterances are a communication of threats to cause physical harm in violation of the aggravated harassment in the second degree statute, Penal Law § 240.30 (1) (a). Similarly, they satisfy as threats to subject the complainant to physical contact as provided in the harassment in the second degree statute (Penal Law § 240.26 [1]). Although most of the acts which would constitute this offense if done with lawful intent are purely physical (i.e., striking, shoving, kicking or otherwise subjecting another person to physical contact or attempts the same), threatening words alone may suffice. In People v Dietze (75 NY2d at 53-54), the Court of Appeals reversed the defendant’s conviction of Penal Law § 240.25 (1), the predecessor in content of the current statute, not because the defendant only uttered words (that she would “beat the crap out of” the complainant “some day or night in the street”) but because the utterance was not proven to be “either serious, should reasonably have been taken to be serious, or *224 was confirmed by other words or acts showing that it was anything more than a crude outburst” (emphasis added). Similarly, in People v Todaro (26 NY2d 325, 330 [1970]), that defendant’s conviction for the same offense as here was reversed because the evidence failed to prove that his utterance, “I’ll get you for this,” was anything more than a teenager’s expression of anger for being arrested and not because there was no accompanying physical act.
Whether a jury will conclude after trial that beyond a reasonable doubt the defendant uttered a true threat to kill rather than a merely angry outburst is not the issue before the court at this time. At the pleading stage, this court “cannot find that the language is incapable of constituting a true threat as a matter of law” (People v Olivio, 6 Misc 3d 1034[A], 2005 NY Slip Op 50300[U], *3 [Crim Ct, NY County 2005]). The accusatory instrument provides the defendant with sufficient notice for him to prepare a defense and avoid double jeopardy (People v Casey, 95 NY2d at 360).
Accordingly, the defendant’s motion for an order dismissing both counts of the accusatory instrument is hereby denied.
Bill of Particulars
The defendant’s motion for an order compelling the People to provide him with a bill of particulars is mooted by the fact that the People have served and filed a voluntary disclosure form, which contains the information sought by him.
Discovery
As to discovery sought by demand pursuant to CPL 240.20, the People shall comply with the demand as it applies to those items enumerated in CPL 240.20 within 15 days of the date of this order. As to those items sought by the defendant but not enumerated in CPL 240.20, the defendant’s motion has failed to set forth with any degree of specificity that the demanded items constitute property which the People intend to introduce at trial. Also, the defendant has failed to show that such property is material to the preparation of a defense and that the defendant’s request is reasonable (CPL 240.40). Therefore, this branch of the motion for discovery is denied.
Preclusion of Statements and Identification Evidence
The defendant’s motions to preclude the introduction of any statements allegedly made by him and any out-of-court *225 identification evidence due to lack of timely notice by the People are referred to the trial court for decision.
Preclusion of Prior Convictions and/or Bad Acts
The defendant’s motion to preclude the introduction of evidence of uncharged crimes in the People’s case-in-chief and to impeach him by alleged prior convictions or bad acts is referred to the trial court for decision.
Reservation of Rights
The defendant’s motion to reserve the right to make further motions is hereby denied. However, upon good cause shown, the court will permit the defendant to make additional motions.

. In Watts, the defendant had been convicted of violating a federal statute making it a crime to threaten the life of the President. The defendant allegedly said at an anti-war rally that he would refuse induction into the armed forces but if “they ever make me carry a rifle the first man I want to get in my sights is L.B.J.,” referring to the then President, Lyndon B. Johnson. The Supreme Court held that the words were pure political hyperbole and so conditional as to be a nullity (id.).

. Dietze had approached the complainant and her son, both “mentally-retarded,” called her a “bitch” and the son a “dog” and told them she would “beat the crap out of [the complainant] some day or night on the street” (id. at 50). The Dietze court held that the subdivision of the harassment statute under which she was charged was constitutionally overbroad because it criminalized such words for their “abusive” language.